**Michael LEOTIS and Theresa Leotis, Plaintiffs,**

**v.**

**The CITY OF NEW YORK, Defendant.**

**No. 91 Civ. 6650 (CBM).**

United States District Court,
S.D. New York.

April 2, 1993.

lateral for any debt of JII (Lewo) to Royal Bank,

Kelner Kelner & Strier, New York City by Arthur I. Strier and Robert B. Marcus, for plaintiffs.

Corporation Counsel for the City of New York, New York City by O. Peter Sherwood and Steven Levi, for defendant.

### OPINION ON MOTIONS FOR JUDGMENT AFTER TRIAL AS A MATTER OF LAW, OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

MOTLEY, District Judge.

Plaintiffs move for judgment, after trial, as a matter of law or in the alternative for a new trial pursuant to Rules 50(b) and 59 of the Federal Rules of Civil Procedure. For the reasons discussed herein, plaintiffs' motions are denied.

### I. BACKGROUND

Michael Leotis is an employee of the New York City Department of Sanitation. He

not specifically as collateral for Mahrle's debt.

was injured while working for the City as a member of the so-called "digger gangs" at Fresh Kills. Fresh Kills is a City landfill on Staten Island, a part of New York City. Mr. Leotis lived on Staten Island. Each day Mr. Leotis went to work at the docks in Staten Island where the Department of Sanitation's fleet of garbage barges, carrying garbage from Manhattan and other parts of New York, were unloaded for the landfill. Mr. Leotis was injured shortly after he began his employment while working on one of the barges. As a result of his injury, Mr. Leotis and his wife brought suit for damages under the Jones Act, 46 U.S.C.App. § 688. Defendant, City of New York, challenged Leotis' right to sue under the Jones Act. The Jones Act gives seamen injured while working the right to sue their employers for negligence.

Following a jury trial on the limited issue of plaintiff Michael Leotis' entitlement to seaman's status under the Jones Act, the jury answered a single special interrogatory in the negative, finding that Mr. Leotis was not entitled to seaman's status. Defendant twice moved for a directed verdict: first after the close of plaintiffs' case (Tr. 175–83) and again after the close of the entire case. (Tr. 346) In each instance the court denied defendant's motion. (Tr. 183; See Tr. 346) The court also denied plaintiffs' motion for judgment as a matter of law following the close of plaintiffs' case (Tr. 183–98), but reserved decision on plaintiffs' motion for judgment as a matter of law at the close of the entire case. (Tr. 342–46) Plaintiffs now move, pursuant to Rule 50(b) F.R.Civ.P., to renew the motion for judgment as a matter of law after the adverse jury verdict or in the alternative for a new trial under Rule 59 F.R.Civ.P.

## II. DISCUSSION

The Supreme Court in a major 1991 decision reviewed and clarified its conflicting and irreconcilable law regarding seaman status which had developed from the beginnings of the country to the present. It then established a new legal test for determining who is a seaman. In instructing the jury in this case, the court instructed the jury to apply this new legal test to the facts as they found them.

In denying defendant's motion for a directed verdict at the end of plaintiffs' case, the court ruled that there was evidence from which the jury could find that plaintiff was a seaman under the Supreme Court's new standard. The court also denied plaintiffs' motion at the end of plaintiffs' case on the ground that there was evidence from which the jury could find that plaintiff was not a seaman and on the ground that defendant was entitled to put on its case.

In *McDermott International, Inc. v. Wilander*, 498 U.S. 337, 111 S.Ct. 807, 818, 112 L.Ed.2d 866, 883 (1991), the Supreme Court determined that the issue of seaman's status under the Jones Act is a mixed question of law and fact. *See also Southwest Marine, Inc. v. Gizoni*, —— U.S. ——, ————–——, 112 S.Ct. 486, 491–92, 116 L.Ed.2d 405 (1991). The legal issue for the district court to determine is the statutory standard. *Wilander*, 498 U.S. at 353–357, 111 S.Ct. at 817–18, 112 L.Ed.2d at 883. " 'Member of a crew' and 'seaman' are statutory terms" whose "interpretation is a question of law." *Wilander*, 498 U.S. at 356, 111 S.Ct. at 818, 112 L.Ed.2d at 883. The Supreme Court interpreted these terms in *Wilander*. *Wilander*, 498 U.S. at 353–357, 111 S.Ct. at 817–18, 112 L.Ed.2d at 883. The jury is left to determine the factual issue given the statutory standard. In *Wilander*, the Court noted that "if reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of a crew,' it is a question for the jury." *Wilander*, 498 U.S. at 356, 111 S.Ct. at 818, 112 L.Ed.2d at 883 (citation omitted). The jury determines the factual issue of whether or not plaintiff is a seaman according to the Supreme Court's new legal test. In this case, there was sufficient evidence on both sides such that reasonable persons could differ as to plaintiff's status as a Jones Act seaman. This question of fact, therefore, was tried before a jury, and a jury determined that plaintiff was not a seaman under the Jones Act.

Subsequent to that jury verdict, the question upon motion for judgment as a matter of

law or for a new trial is no longer whether plaintiff was or was not a seaman; rather the question is whether there was overwhelming evidence that plaintiff was a seaman so as to warrant judgment as a matter of law, or in the alternative, a new trial.

### A. Rule 50(b)

Rule 50(b) states:

Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal question raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment. A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative. If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law. . . .

The standard for judgment as a matter of law pursuant to Rule 50(b) is whether " 'the evidence, viewed in the light most favorable to the non-movants without considering credibility or weight, reasonably permits only a conclusion in the movants' favor.' " *Jund v. Town of Hempstead*, 941 F.2d 1271, 1290 (2d Cir.1991) (*quoting Sirota v. Solitron Devisces, Inc.*, 673 F.2d 566, 573 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982)); *Pena v. Brattleboro Retreat*, 702 F.2d 322, 323 (2d Cir.1983) (same); *See also Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 824 (2d Cir.1992) ("test is whether the evidence presented at trial, taken in the light most favorable to the prevailing party, was sufficient to allow a reasonable juror to arrive at the challenged verdict") (*citing Schwimmer v. Sony Corp. of America*, 677 F.2d 946, 951–52 (2d Cir.), *cert. denied*, 459 U.S. 1007, 103 S.Ct. 362, 74 L.Ed.2d 398 (1982)). In *Haskell v. Kaman Corp.*, 743 F.2d 113, 120 (2d Cir.1984), the Second Cir-

cuit delineated the standard for judgment as a matter of law in the following manner:

(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [people] could not arrive at a verdict against [the movant]

(citation omitted).

Plaintiffs' burden in this case is, therefore, a heavy one. Plaintiffs must show, viewing the evidence in a light most favorable to the City, that the jury was unreasonable in reaching its conclusion that Leotis was not a "seaman" under the Jones Act.

■ The Jones Act does not define "seaman." The standard for seaman's status under the Jones' Act was recently redefined by the Supreme Court in *McDermott International Inc. v. Wilander*, 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). In discussing the history of seaman's status under the Jones Act, the Court in *Wilander* noted that the intent of Congress was to "establish a clear distinction between land-based and sea-based maritime workers. The latter, who owe their allegiance to a vessel and not solely to a land-based employer, are seaman." *Wilander*, 498 U.S. at 347, 111 S.Ct. at 813, 112 L.Ed.2d at 877. Interpreting congressional intent, the Court noted that "[w]hether under the Jones Act or general maritime law, seamen do not include land-based workers. . . . 'master or member of a crew' restates who a 'seaman' under the Jones Act is supposed to be: a sea-based maritime employee." *Wilander*, 498 U.S. at 348, 111 S.Ct. at 814, 112 L.Ed.2d at 878. While a seaman must be sea-based, the Court held that a person need not aid in navigation in order to be a Jones Act seaman. *Wilander*, 498 U.S. at 352–355, 111 S.Ct. at 816–17, 112 L.Ed.2d at 881. The Court concluded that seaman's status under the Jones Act is defined "in terms of the employee's connection to a vessel in navigation" and that "a necessary element of the connection is that a seaman perform the work of a vessel." *Wilander*, 498 U.S. at 354–355, 111 S.Ct. at 817, 112 L.Ed.2d at 882.

Following *Wilander*, this court charged the jury that the plaintiff was a seaman if he proved by a fair preponderance of the credible evidence that he performed the work of the vessel. He performed the work of the vessel if and only if: 1) he was assigned permanently to vessels or performed a substantial part of the work on vessels; and 2) the capacity in which he was employed or the duties that he performed contributed to the function of vessels or to the accomplishment of the vessels' mission or to the operation or maintenance of the vessels during their movements or while at anchor for the vessels' future trips. Pursuant to *Wilander*, the jury was also charged that a person need not aid in the navigation of vessels in order to qualify as a seaman. Nevertheless, seamen do not include land-based workers.

■ Plaintiffs must prove their case for judgment as a matter of law or for a new trial. *See Wilander*, 498 U.S. at 353–357, 111 S.Ct. at 817–18, 112 L.Ed.2d at 883. Plaintiffs have failed to meet the heavy burden of proof required for judgment as a matter of law. Plaintiffs have not proven "such a complete absence of evidence supporting the verdict" that "the jury's findings could only have been the result of sheer surmise and conjecture." Plaintiffs have not proven such overwhelming evidence in their favor that a verdict against them could only be deemed unreasonable. *Haskell*, 743 F.2d at 120.

Plaintiffs are correct in arguing that there was a significant amount of evidence that Mr. Leotis was a member of a crew of people who spent a substantial amount of work-time furthering the mission of a fleet of vessels on navigable waters. Both plaintiffs' witnesses and defendant's witnesses testified that one of the daily responsibilities of the digger gangs at Fresh Kills was to shift garbage barges through the water, along the dock and under the crane that is used to dig out the garbage. (Trial Transcript "Tr." 163, 218–19, 266) Both plaintiffs' witness and defendant's witness testified that members of the digger gang went onto the barges and collapsed the netting that covers the garbage before the garbage can be removed. (Tr. 83, 274) Plaintiffs' witnesses and defendant's witness testified that members of the digger gang went onto the barges to place canvas under the crane, reaching from the barge to the land, to prevent garbage from falling into the water. (Tr. 84, 86, 163, 274) Both defendant's witness and plaintiffs' witness testified that the work of the digger gang was affected by the wind and the tide. (Tr. 84, 288–89)

In addition, both plaintiffs' witnesses and defendant's witnesses testified that the digger gang was responsible for water quality—sweeping the decks of the barges, ensuring that garbage did not fall into the water, and removing any garbage that did fall into the water with nets on poles. (Tr. 85, 109, 169, 228, 238) Defendant's witness and plaintiffs' witnesses testified that to maintain water quality and to clean the garbage that remained when the crane was no longer capable of removing it, members of the digger gang went onto the barges and swept the decks of the barges. (Tr. 86, 163, 217, 268–69) Plaintiffs' witness and defendant's witness testified that the catwalkman, who is a member of the digger gang, at times went onto the barges to check to see if a barge was taking in too much water. (Tr. 89, 90, 278) Plaintiffs' witness, Robert Romano, testified that members of the digger gang periodically pumped excess water out of barges that were taking in too much water. (Tr. 89) Plaintiffs' witness, Vincent Capadanno, who had previously held seaman's papers and worked as a seaman, testified that some of the work that he performed as a member of the digger gang was similar to the work that he performed as a merchant marine. (Tr. 158–59)

On the other hand, there was also evidence that 1) members of the digger crew did work other than seaman's work such that members of the digger gang did not spend a substantial amount of time doing seaman's work and 2) members of the digger gang are land-based workers.

Other than work on the barges or in the water, members of the digger gang also fulfilled various responsibilities that were not seaman's work and which required a significant amount of time. Plaintiffs' witness and defendant's witness testified that once a barge was positioned under the crane, mem-

bers of the digger crew often connected the tractors to the wagons that carry the garbage from the shore to the landfill. (Tr. 85, 115, 228, 238, 270, 296–97) Defendant's witnesses testified that the digger gang was responsible for changing the bucket on the crane. (Tr. 239, 296–97) Plaintiffs' witness, Robert Romano, testified that the digger gang was responsible for cleaning on the land around the wagons that carry the garbage to the landfill. (Tr. 116) Plaintiffs' witness and defendant's witness testified that the digger gang was responsible for cleaning the garbage from the pad where the crane sits. (Tr. 116, 228) Mr. Leotis testified that as a member of the digger crew, his responsibilities included land patrol—picking up garbage on the land. (Tr. 153) Plaintiffs' witness and defendant's witness testified that members of the digger gang were responsible for changing crane cables and gypsy cables, the cables on the machines on the land that are used in the digging process. (Tr. 115, 228, 238, 269, 296–97)

Both plaintiffs' witnesses and defendant's witnesses testified that it typically required approximately an hour and 45 minutes to complete the total process of digging out one garbage barge. (Tr. 87, 163, 217) Of this total completion time, approximately 45 minutes was spent on the barges either moving them or cleaning them or repositioning them—20 to 25 minutes was spent moving the net, preparing the canvas, and cleaning and 35 to 45 minutes was spent shifting the barge through the water. (Tr. 87, 114, 163, 217, 292–93) Defendant's witness, Michael Mucci, testified that for various reasons having to do with maintenance and equipment, the digger gang often did not shift the targeted three barges and therefore did not spend as much time on the barges as usual. (Tr. 220)

While plaintiffs' may have established that Mr. Leotis, as a member of the digger gang, spent a substantial amount of time on the barges furthering the mission of the barges, there was not a complete absence of evidence by defendant to the contrary, indicating that he was not a seaman—that he did other than

seaman's work or less than a substantial proportion of seaman's work. In other words, the evidence was not so overwhelmingly in Mr. Leotis' favor so as to be unreasonable. The fact that this court may have found the facts differently is not controlling. The jury's finding of fact is controlling where there is a reasonable basis for a difference of opinion.

Defendant also offered evidence to show that Mr. Leotis was not a seaman but a land-based worker. Plaintiff, Mr. Leotis, testified that he was employed by the Department of Sanitation, a land-based employer. (Tr. 149) Both plaintiffs' witnesses and defendant's witness testified that even when members of the digger gang went onto the barges to move the barges through the water and reposition them, the barges were attached to the land at all times by a power cable (gypsy cable) which came from a power house (gypsy house) which was on the land. (Tr. 97–99, 102–05, 114) Plaintiffs' witness and defendant's witness testified that the digger gang's responsibility of checking for excess water in the barges often did not require members of the digger gang to go onto the barges; rather checking for water could be performed by a visual check from the shore. (Tr. 118, 297–98) Defendant's witness, Donald Ritchie, testified that the digger gang's responsibility of maintaining water quality by using the dip nets to fish out garbage was often done from the shore. (Tr. 269)

The jury reasonably could have found in favor of either plaintiffs or defendant. The testimony provided evidence from which the jury reasonably could conclude that plaintiff was not a seaman because he was a land-based worker or because he did not spend a substantial amount of time doing seamen's work. Therefore plaintiffs' motion for judgment notwithstanding verdict is denied.

B. *Rule 59*

Rule 50(b) permits a motion for a new trial pursuant to Rule 59 Fed.R.Civ.P. to be joined with it or to be sought in the alternative.[1] Plaintiffs in this case have

---

1. Rule 59, providing for new trials and amendment of judgments states in pertinent part:

(a) **Grounds.** A new trial may be granted to all or any of the parties and on all or part of

asked that in the event that this court does not direct judgment as a matter of law it grant a new trial. The standard for granting a new trial is lower than the standard for granting judgment as a matter of law. *Katera v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970 (2d Cir.1987). *See also Slade v. Whitco Corp.,* 810 F.Supp. 396, 400 (N.D.N.Y.1993). "The district court's grant of a new trial motion is usually warranted only if it 'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Sorlucco v. New York City Police Department,* 971 F.2d 864, 875 (2d Cir.1992) (*quoting Smith v. Lighting Bolt Productions, Inc.,* 861 F.2d 363, 370 (2d Cir.1988)). Whether or not to grant a new trial is a discretionary matter for the court. *See Chiarello v. Domenico Bus Service, Inc.,* 542 F.2d 883, 885 (2d Cir.1976) ("if ... it is clear to the trial judge that the jury has reached an erroneous result, then it is within [the judge's] discretion to grant a new trial"). *See also Haber v. County of Nassau,* 557 F.2d 322, 325 (2d Cir.1977); *Sotell v. Maritime Overseas Inc.,* 474 F.2d 794, 796 (2d Cir.1973) (affirming denial of motion for new trial). However, the "grant of a new trial on weight of the evidence grounds should be reserved for those occasions where the jury's verdict was egregious." *Dunlap–McCuller v. Riese Organization,* 980 F.2d 153 (2d Cir.1992).

As discussed above, the question at hand is not whether or not plaintiff was a seaman; rather the question is whether the evidence was such as to warrant the court's exercising its discretion to grant a new trial. Given the evidence as discussed above, the jury's verdict in this case was not egregious or seriously erroneous so as to constitute a miscarriage of justice. Based on the evidence presented at trial by both plaintiffs' witnesses and defendant's witnesses, the jury could reasonably have concluded that plaintiff was a land-based employee or did not sufficiently contribute to a vessel or fleet of vessels in navigation as required for seaman's status under the Jones Act. Therefore plaintiffs' alternate motion for a new trial is denied.

the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted

## III. CONCLUSION

For the foregoing reasons, plaintiffs' motions for judgment as a matter of law and in the alternative for a new trial are denied.

## JUDGMENT

Following a jury verdict that plaintiff Michael Leotis was not a seaman under the Jones Act and therefore not entitled to any remedy under the Jones Act, plaintiffs moved for judgment, after trial, as a matter of law or in the alternative for a new trial pursuant to Rules 50(b) and 59 of the Federal Rules of Civil Procedure.

Pursuant to this court's opinion of April 2, 1993, plaintiffs' motions for judgment as a matter of law and for a new trial are denied. Plaintiffs' claim to seaman status is dismissed.

So ordered.

in actions at law in the courts of the United States ...