Spain, J.
Cross appeals from an order of the Supreme Court (Kavanagh, J.), entered January 6, 2003 in Ulster County, which, inter alia, granted a motion by defendant Thomas J. Feeney Enterprises, Inc. for summary judgment dismissing the complaint against it and partially granted the remaining defendants’ cross motion for summary judgment dismissing the complaint against them.
Plaintiff commenced this action to recover for injuries allegedly sustained while employed as a “trimmer” on a barge owned by defendants Lone Star Industries, Inc. and/or its subsidiaries (hereinafter the Lone Star defendants). The Lone Star defendants utilize approximately 100 barges to transport crushed limestone from a quarry located on the eastern shore of the Hudson River. Plaintiff was injured on October 22, 1996 when he fell on loose stone while traversing the deck of “Barge 38.” In his complaint, plaintiff seeks to recover for the negligence of the Lone Star defendants under the Jones Act (46 USC Appendix § 688) and as the owners of the barge under principles of general maritime law. He also states a cause of action against *862 defendant Thomas J. Feeney Enterprises, Inc. (hereinafter Feeney), claiming that Feeney had a service contract with the Lone Star defendants and negligently failed to repair and maintain the deck of the barge where plaintiff was injured.
Feeney moved for summary judgment, as did the Lone Star defendants. Plaintiff moved for partial summary judgment to establish liability on the part of the Lone Star defendants. Supreme Court partially granted the Lone Star defendants’ cross motion, finding that plaintiff was not a “seaman” entitled to compensation under the Jones Act, but that questions of fact existed as to whether the Lone Star defendants, as the owners of the barge, were negligent in maintaining the barge. Supreme Court also granted Feeney’s motion for summary judgment inasmuch as it concluded, as a matter of law, that Feeney owed no duty to plaintiff. Plaintiff appeals and the Lone Star defendants cross-appeal.
First, we examine plaintiffs contention that he is a seaman under the Jones Act and, therefore, that the Lone Star defendants were not entitled to summary judgment. The Jones Act extends a cause of action to seamen injured in the course of their employment (see 46 USC Appendix § 688 [a]), but does not define the term “seaman.” A long history of case law, however, establishes that to be a seaman under the Jones Act, plaintiff must satisfy a two-pronged test. “First, an employee’s duties must contribut[e] to the function of the vessel or to the accomplishment of its mission” (Caputo v Clean Harbors, 218 AD2d 924, 925 [1995] [internal quotation marks and citations omitted]; see Chandris, Inc. v Latsis, 515 US 347, 368 [1995]). “Additionally, ‘a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature’ ” (Caputo v Clean Harbors, supra at 925, quoting Chandris, Inc. v Latsis, supra at 368).*
“The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury. Nevertheless, ‘summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion’ ” (Harbor Tug & Barge Co. v Papai, 520 US 548, 554 [1997], quoting McDermott Intl. v Wilander, 498 US 337, 356 [1991]). Hence, even where the pertinent facts are largely undisputed, the issue must be left for the trier of fact *863 unless the application of the proper legal standards to the facts presented will reasonably support but one conclusion (compare Offshore Co. v Robison, 266 F2d 769, 781 [5th Cir 1959], and Buccellato v City of New York, 808 F Supp 967, 970 [ED NY 1992], with Sologub v City of New York, 202 F3d 175, 178 [2d Cir 2000]). Noting that plaintiff did not possess seamanship papers, that he was a member of a labor union rather than a seaman’s union and finding that he was a land-based employee with minimal contacts to the water, Supreme Court concluded that a jury could only reach the conclusion that plaintiff was not a seaman and, thus, granted summary judgment. Because, in our view, the facts could support a different conclusion, we reverse the summary judgment award to the Lone Star defendants.
According to plaintiffs testimony, the empty barges, which are not self-propelled, are moved to shore and into position at a loading dock by a push boat. Trimmers waiting at the dock apply steel winch cables around the barge and then board the barge and secure lines used to stabilize it during loading and to keep it close to the dock. Crushed stone is then loaded onto the barge from a conveyor belt-fed chute while the trimmers level the stone with rakes as it falls into the well, or cargo box, of the barge. The trimmers also assist in changing and adjusting the running lines as the barge tilts (while taking on weight) and guide the winch operator—using hand signals—as the barge is gradually pulled by the winch along the loading dock so that the chute uniformly loads the barge from front to back. When each barge is filled, the trimmers remove the winch cables and release the lines allowing the barge to float freely, and they remain aboard as a push boat engages the barge and moves it some 50 to 100 yards to a nesting area where other filled barges are stockpiled awaiting delivery to customers. The trimmers tie the loaded barge to the others using lines and, once the barge is secured, they return to shore by riding the push boat or leaping from barge to barge to a ladder leading to the dock.
During the loading process trimmers work in two rotating teams. While one team is working on a barge being loaded, the other team may be riding a loaded barge to the nesting area, returning to the shore, waiting for an empty barge at the dock, assisting other employees in other job areas or having breakfast or lunch. Trimmers are engaged in the loading process 10 months during the year (early March to late December) and, during this seasonal period, they work 12 to 16-hour shifts often six or seven days a week. During the off-season, trimmers work on shore doing maintenance and repair. Occasionally, the load *864 ing process is also shut down during the loading season for repair and maintenance. Plaintiff estimates that, during the loading season, he spent approximately nine out of 12 hours of each workday actually on board these moving barges.
Based on the foregoing, a factfinder could rationally conclude that plaintiff was “perform [ing] the work of a vessel” (McDermott Intl. v Wilander, supra at 355), that he had connection to an identifiable group of vessels in navigation which was “substantial in terms of both its duration and its nature” (Chandris, Inc. v Latsis, supra at 368; see Mach v Pennsylvania R.R. Co., 317 F2d 761, 763-764 [3rd Cir 1963]; Leotis v City of New York, 818 F Supp 63, 64 [SD NY 1993]; Buccellato v City of New York, supra at 971-972; see also Gaines v Gulfcoast Tr. Co., 1996 WL 334430, *1-4, 1996 US Dist LEXIS 8787, *1-13 [ED La 1996]), and that he has more than “a transitory or sporadic connection to a vessel in navigation” (Chandris, Inc. v Latsis, supra at 368). On the other hand, plaintiff was a member of a laborers’ union, went home at the end of every shift, did not spend his entire day nor eat his meals on a barge, did not travel any great distance on the barges and did not operate the machinery or any vessel actually used to navigate the barge. Accordingly, we cannot agree with plaintiff that, as a matter of law, judgment is appropriate against the Lone Star defendants (see O’Hara v Weeks Mar., 294 F3d 55, 64 [2d Cir 2002]; Burns v Anchor-Wate Co., 469 F2d 730, 732-733 [5th Cir 1972]; Caputo v Clean Harbors, 218 AD2d 924, 925-926 [1995], supra). Under the facts of this case, the question of whether plaintiff qualifies as a seaman under the Jones Act must be resolved by a jury (see Buccellato v City of New York, supra).
Next, we conclude that Supreme Court properly denied summary judgment to the Lone Star defendants with respect to plaintiff’s claim that the Lone Star defendants are liable for negligence as the owners of the vessel on which he was injured. If plaintiff is found to be a longshoreman rather than a seaman, he may assert a cause of action against the owner of the vessel on which he was injured—even where, as here, the owner and his employer are one and the same (see 33 USC § 905 [b]; Jones & Laughlin Steel Corp. v Pfeifer, 462 US 523, 530-532 [1983]; O’Hara v Weeks Mar., supra at 62). As vessel owners, the Lone Star defendants have a duty to, at a minimum, “exercis[e] ordinary care under the circumstances” in maintaining the vessel such that “an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety” (Scindia Steam Nav. v De Los Santos, 451 US 156, 166-167 [1981]; see Gravatt v City of New *865 York, 226 F3d 108, 119-121 [2d Cir 2000], cert denied 532 US 957 [2001]). Plaintiff submitted expert testimony opining that the deck surface was not painted with nonskid paint and had become covered with an accumulation of stone, creating a dangerous condition. Based on these alleged conditions, plaintiff also asserts violations of certain safety regulations (see 29 CFR 1918.91 [a], [b]; Lieggi v Maritime Co. of Philippines, 667 F2d 324, 328 n 8 [2d Cir 1981]). Under these circumstances, Supreme Court correctly determined that, should plaintiff be determined to be a longshoreman, a material issue of fact exists as to whether the Lone Star defendants, as the owners of Barge 38, breached their duty owed to him.
Finally, we reject plaintiffs contention that Supreme Court erred in granting summary judgment to Feeney. The undisputed evidence on this issue demonstrates that although Feeney was hired by the Lone Star defendants to make specific repairs to the barges—including cleaning the decks—Feeney performed these tasks based on individual work orders rather than pursuant to any continuing service contract with any of the Lone Star defendants. Indeed, plaintiff has failed to demonstrate that Feeney owed him—a third-party to any contractual relationship between Feeney and the Lone Star defendants—a duty of any kind (see Espinal v Melville Snow Contrs., 98 NY2d 136, 138 [2002]). Inasmuch as “[i]t is well established that before a defendant may be held hable for negligence it must be shown that the defendant owes a duty to the plaintiff’ (Pulka v Edelman, 40 NY2d 781, 782 [1976]), Supreme Court properly granted summary judgment to Feeney.
Crew III, J.P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially granted the cross motion of defendants Lone Star Industries, Inc., New York Trap Rock Corporation, New York Trap Rock Company and NYTR Transportation Corporation for summary judgment; said cross motion denied in its entirety; and, as so modified, affirmed.

 At this juncture, the parties do not dispute that Barge 38 qualifies as a “vessel” under the Jones Act (see Mach v Pennsylvania R.R. Co., 317 F2d 761, 763 [3d Cir 1963]; cf. Orr v City of New York, 304 AD2d 541, 542 [2003], lv denied 100 NY2d 508 [2003]).