**Manuel ALVAREZ and Catherine J. Alvarez, Plaintiffs,**

v.

**New York State Police Investigator Angel ABREAU, et al., Defendants.**

**No. 94 Civ. 6419(CM).**

United States District Court, S.D. New York.

June 25, 1999.

---

Lewis B. Oliver, Jr., Albany, NY, for Manuel Alvarez, plaintiffs.

Richard Cardinale, Stacy Sabitini, Assistant Attorneys General, State of New York, Office of the Attorney General, New York City, for defendants.

ORDER GRANTING PLAINTIFFS' POST–TRIAL MOTION FOR JUDGMENT AS A MATTER OF LAW ON LIABILITY AGAINST DEFENDANTS SCHRAFF AND BORBOLLA FOR UNLAWFUL SEARCH AND SEIZURE, AND ORDERING A NEW TRIAL AGAINST THOSE DEFENDANTS FOR DAMAGES

McMAHON, District Judge.

Judges are often advised to reserve on mid-trial motions if they have any doubt whatsoever about granting them, and to submit the case to the jury in the hope that its verdict will moot the issue. Occasionally, a judge regrets following that advice. In this case, it was clearly wrong for me to do so.

Insofar as is important, this case concerned a warrantless seizure of a number of guns from the rear of the Fishkill premises known as Manny's of Fishkill, a combination barber shop and licensed firearms dealership run by Manuel Alvarez and his wife, Catherine. Mr. Alvarez was arrested on January 29, 1992, after being indicted for his alleged participation in an unsolved and mysterious armed jewel heist in Poughkeepsie. Mr. Alvarez was, at the same time, the target of a Dutchess County District Attorney's Office investigation into defaced firearms that had ended up in

the hands of juvenile criminals; some of the firearms that were the subject of that investigation had been traced to the Alvarez's gun shop.

Shortly after Mr. Alvarez was arrested on the robbery charge and removed from his shop, the New York State Police returned with a search warrant, issued by Judge Francis Cross of the Fishkill Town Court, that authorized them to search for "... any records or books relating to the purchasing or sale of firearms, any state or federal dealer licenses for firearms, and any tools or equipment used for the defacement of firearms." (Plaintiffs' Ex. 30, Search Warrant issued by Hon. Francis Cross, dated January 29, 1992.) The search warrant did not authorize a search for or the seizure of any guns. Nonetheless, the State Troopers who arrived at the premises found a number of guns stored in boxes in the back room at Manny's of Fishkill. At least one of the troopers, defendant Frank Borbolla, inspected some of those guns, unwrapping them, removing them from the boxes and taking off the handles or removing the slides to inspect their serial numbers. None of the guns examined was in any way defaced. Nonetheless, the troopers seized them, along with the Alvarezes' State and Federal gun licenses, gun sale records and a box of various tools.

The guns were held in storage for several months, during which period the indictment against Mr. Alvarez was dismissed on a technicality. He was not re-indicted. Nonetheless, the State police did not return the guns to the plaintiffs, and attempts by Mr. Alvarez's criminal attorney over several months to get the guns and other property back were unsuccessful. At some point in late 1992 or early 1993, the guns were transferred to the Federal Bureau of Alcohol, Tobacco and Firearms (ATF). An investigation was begun by the United States Attorney, and in March 1994, Mr. Alvarez pled guilty to a Federal misdemeanor charge of not keeping accurate and appropriate gun records. Mr.

Alvarez was placed on probation for two years, during which time he was not allowed to sell guns. His wife, who was also a licensed firearms dealer, was still able to sell guns, and the sentencing court gave Mr. Alvarez permission to assist her in liquidating the inventory from his old business. The Alvarezes, however, never picked up the guns from the ATF.

They did bring the instant action, in which they allege, *inter alia*, that the seizure of the guns violated their Fourth Amendment rights. That charge, along with a charge of use of excessive force during Mr. Alvarez's arrest, was tried to a jury from January 11–27, 1999. At various times during the trial, the plaintiffs asked the Court to rule that they were entitled to judgment as a matter of law on the search and the seizure claims (Tr. 1049 lines 1 – 6; Tr. 1138 lines 1 – 8). Plaintiffs also moved specifically to dismiss the trooper defendants' plain view and qualified immunity defenses to the search and seizure claims. (Tr. 1028 line 17 – 1029 line 10; Tr. 1076 lines 21 – 24.) The Court granted the motion to dismiss the plain view defense (Tr. 1040 line 22 – 1046 line 12; Tr. 1049 line 8 – 1052 line 2), but reserved on the other motions and continued the trial. (Tr. 1049 lines 7–9; Tr. 1052 lines 7 – 11; Tr. 1062 lines 14 – 20; Tr. 1076 line 21 – 1077 line 5; Tr. 1138 line 19 – 1140 line 10.)

At the conclusion of the trial, the jury found that two of the six New York State Trooper defendants, Senior Investigator Robert Schraff and Investigator Frank Borbolla (hereinafter, "the defendants"), had unlawfully seized items, including several guns, from Manny's of Fishkill on January 29, 1992. (*See* Schraff and Borbolla Verdict Forms, Question 1, attached as Ex. E to the Affidavit of Lewis B. Oliver, Jr. ("Oliver Aff.").) Confronted with a confusing verdict form (for which the Court takes full responsibility), the jury also found that the guns were not seized "intentionally or recklessly" (*see* Schraff and Borbolla Verdict Forms, Ques-

tion 3, attached as Ex. E to Oliver Aff.)—despite the fact that defendants Schraff and Borbolla admitted that they knew they were seizing guns, knew that guns were not listed in the search warrant, and made a conscious decision to take the guns from the shop. As a result of its response to Question 3, the jury found both of the defendants not liable to the Alvarezes for damages resulting from the seizure.[1]

Plaintiffs have moved for a post-trial judgment as a matter of law as against defendants Schraff and Borbolla pursuant to Federal Rule of Civil Procedure 50(b), and, alternatively, for a new trial against those defendants pursuant to Federal Rule 59. In addition, the Court has before it plaintiffs' motions for a directed verdict, on which I reserved during the course of the trial.

■ After reviewing the record, I conclude that I should have directed a verdict on the search and seizure claims (as to liability only) in favor of plaintiffs and against defendants Schraff and Borbolla at the close of all the evidence. The plaintiffs were entitled to judgment as a matter of law because the only reasonable view of the evidence was that the guns were seized unlawfully and that the defendants were not entitled to qualified immunity to protect them against the consequences of their actions.

Indeed, the jury found that the defendants were not entitled to qualified immunity for the seizure, because they found the seizure to be unlawful. The jury's conclusion that the defendants did not seize the guns intentionally or recklessly—a question they should never have been asked with respect to the seizure claim—is not supported by the evidence presented at trial. Viewing the evidence in the light most favorable to the defendants, as I must on a motion for judgment as a matter of law, I find that no reasonable or fair-minded juror could have found no liability for seizure of the guns. There was no evidence presented at trial from which the jury could have found that the defendants seized the guns accidentally or mistakenly, rather than purposely. To the contrary, defendants Schraff and Borbolla testified that they made a conscious decision to seize all the guns and did so on purpose. Moreover, a finding of lack of intent is inconsistent with the jury's conclusion, in response to Question 1, that the defendants *unlawfully* seized the guns from plaintiff's shop.

Plaintiffs' motion for judgment as a matter of law as against defendants Schraff and Borbolla for the seizure of the guns is granted. Plaintiffs are at the very least entitled to an award of nominal damages, and possibly to compensatory and/or punitive damages for the violation of their Fourth Amendment rights. Therefore, I order a new trial, limited to the amount of damages owed to plaintiffs. Plaintiff's alternative motion for a new trial as to liability is denied.

### Background

The facts underlying this action are not complex. Mr. and Mrs. Alvarez were at all relevant times duly licensed firearms dealers, who operated a legitimate gun shop out of Mr. Alvarez's barber shop. Mr. Alvarez had been under investigation for some months by the Dutchess County District Attorney's office on two separate matters: as an alleged accomplice in a well-publicized robbery that took place in Poughkeepsie in September 1991 (Mr. Alvarez's highly distinctive car was used as the getaway vehicle), and as a possible supplier of defaced firearms to juveniles or

1. The jury found no liability against defendant Borbolla, or against Investigator Angel Abreau, on Mr. Alvarez's claim for use of excessive force, and found no liability against the remaining State Trooper defendants—Douglas Johnstone, Harold Bloomer and William DeBlock—on plaintiffs' claims for un-lawful search and seizure. Mr. Alvarez's claims against Defendants Wagner and Holland of the Town of Poughkeepsie Police Department for use of excessive force were dismissed as a matter of law prior to submission of the case to the jury.

others. On January 29, 1992, officers from the New York State Police and the Town of Poughkeepsie Police came to the plaintiffs' place of business, Manny's of Fishkill in Fishkill, New York, to arrest him (and one of his employees, Michael Archer) after the primary suspect in the robbery, one Edwin Garcia, became aware that he was under police surveillance and was quickly placed under arrest. Several officers from the Town arrived at Manny's, placed Mr. Alvarez and Mr. Archer under arrest, and transported them to the Town of Poughkeepsie police station.

Later the same day, Senior Investigator Robert Schraff of the New York State Police swore out an application for a search warrant for Manny's of Fishkill before Judge Francis Cross of the Town Court of the Town of Fishkill. Senior Investigator Schraff sought the search warrant in connection with the Dutchess County DA's investigation into firearm defacement. The warrant issued by Judge Cross authorized the officers as follows:

> To any police officer of the NEW YORK STATE POLICE AND/OR TOWN OF POUGHKEEPSIE POLICE DEPARTMENT:
>
> (a) You are hereby authorized and directed to search for and to seize the following property: ANY RECORDS OR BOOKS RELATING TO THE PURCHASING OR SALE OF FIREARMS, ANY STATE OR FEDERAL DEALER LICENSES FOR FIREARMS, AND ANY TOOLS OR EQUIPMENT USED FOR THE DEFACEMENT OF FIREARMS.

Plaintiffs' Ex. 30, Search Warrant issued by Hon. Francis Cross, dated January 29, 1992.

Senior Investigator Schraff and several other members of the State Police came to Manny's of Fishkill late in the evening on the 29th to execute the warrant. Also present during the execution of the search warrant were two Assistant District Attorneys who were involved in the investiga-tion. Mrs. Alvarez was at the shop briefly. Mr. Alvarez was still in custody.

According to testimony by both defendants Schraff and Borbolla, once inside Manny's, they proceeded to search the shop for the items specified in the search warrant and seized approximately 33 items, including firearms records, firearms licenses, and some tools that they believed could be used to deface firearms. (Tr. 651 lines 10–15; Tr. 701 lines 16–18; Tr. 764 lines 10–23; Tr. 836 lines 11–14.) Investigator Schraff testified that the tools seized, which included a center punch and a hammer, were taken from the rear office of the shop. (Tr. 701 line 20 – 702 line 6.) In this same rear office, in the vicinity of the tools, the defendants also found some 16 or 17 handguns. (Tr. 702 lines 7 – 17; Tr. 703 lines 13–20; Tr. 848 lines 18–24.) Investigator Schraff testified that the guns were in boxes and on shelves in the back office, and that they were not tagged or in any other way marked so as to indicate that they were for sale. (Tr. 702 line 18 – 704 line 11.) Investigator Schraff testified that the guns were not seized at first, but were taken and recorded on the property seizure inventory after conversations where one or both of the ADAs were present. (Tr. 706 lines 11 – 15; Tr. 779 line 9 – 781 line 22.) Investigator Borbolla testified, similarly, that he was involved in seizing tools from the shop, as well as guns. (Tr. 836 lines 11 – 14; Tr. 848 lines 5–8.)

Investigator Schraff stated at trial that he knew that the search warrant did not authorize the seizure of guns, but that "[the guns] were in the same vicinity as the defacing tools, and ... [t]hey were obviously not for sale." (Tr. 705 lines 22 – 25; Tr. 780 lines 13–17.) The defendants specifically testified that during the search and seizure Investigator Borbolla opened and closely inspected several of the guns, with an eye to determining if they were defaced. (Tr. 786 line 11 – 787 line 17; Tr. 788 line 24 – 790 line 4; Tr. 801 lines 7 – 13.) Despite their finding that none of the

guns appeared to be defaced—and despite the fact that the search warrant did not authorize the search for or seizure of guns—the defendants seized all the guns that were found at Manny's of Fishkill (a total of approximately 18 weapons). All of the items seized from the shop were brought back to the Fishkill barracks and secured in the Fishkill evidence locker. The guns were then sent to Albany so that the serial numbers could be checked for defacement or for use in crimes. The guns were returned from Albany with a state police laboratory report showing that each one came up clean.

Having admitted to seizing property that was clearly outside the scope of the search warrant they had obtained, defendants Schraff and Borbolla offered two defenses to the seizure at trial.

First, the Trooper defendants argued that they were entitled to seize the guns from Manny's under the "plain view" exception to the prohibition against warrantless searches. The defendants sought to convince the jury that it was immediately apparent to them, upon observing items in plain view in the shop, that the guns were evidence of a crime. As such, they argued, they were entitled not only to pick up and inspect the guns, but to seize them without a warrant.

At the close of defendants' evidence, the Court granted plaintiffs' motion for a directed verdict as to the plain view defense. (Tr. 1040 line 22 – 1046 line 12; Tr. 1049 line 8 – 1052 line 2.) The testimony showed that the State Trooper defendants knew Manuel Alvarez and were familiar with his barbershop/gunshop, Manny's of Fishkill. They knew he was a licensed gun dealer and that he had a legal right to possess firearms. They knew they were searching a gun shop, so the fact that they found guns could hardly have come as a surprise. And, by defendants' own admission, they were involved in a gun defacement investigation and none of the guns they saw in the shop showed any sign whatsoever of being defaced. Thus, based on the defen-

dants' testimony, the plain view exception to the warrant requirement failed as a matter of law.

The defendants' second defense to the seizure of the guns was that they were entitled to qualified immunity because of advice rendered by the two Assistant District Attorneys who were present during the search. The defendants testified that ADAs Edward Whitesell and Marjorie Smith told them to seize the guns, and they asserted that their actions in following the ADAs' alleged advice were objectively reasonable under the circumstances. They could not, however, remember precisely what it was that the ADAs told them. (Tr. 780 line 17 – 781 line 22; Tr. 809 line 12 – 810 line 3.) ADAs Whitesell and Smith testified that they did not recall being asked by the defendants about seizing the guns and could remember giving no advice to the troopers on the subject. (Tr. 1086 line 15 – 1089 line 6; Tr. 1101 line 18 – 1103 line 19.)

At the close of the evidence, plaintiffs moved for a directed verdict on the qualified immunity defense. (Tr. 1076 lines 21 – 24.) The Court reserved on the motion and submitted the question of qualified immunity to the jury. The jury instruction on qualified immunity read as follows:

### Qualified Immunity Defense

On the seizure claim, plaintiffs allege that the defendants seized their guns illegally. There is no question on this record that the search warrant, plaintiffs' exhibit 30, does not authorize seizure of the guns. Based on other rulings I have made in your absence, I charge you that the seizure of the guns presumptively violated the Fourth Amendment.

Nonetheless, the Trooper Defendants contend that they are entitled to what the law knows as "qualified immunity" which, if imposed, would insulate them from liability in this case. As with all other matters in this case, you must

consider this defense as to each of the defendants individually.

A defendant will be entitled to qualified immunity if, during the seizure of the weapons, he neither knew nor should have known that his actions were contrary to federal law. A defendant will be entitled to qualified immunity if his actions were objectively reasonable under the circumstances. The simple fact that a defendant acted in good faith is not enough to bring him within the protection of this qualified immunity. Nor is the fact that a defendant was unaware of the federal law enough to entitle him to immunity. The defendant is entitled to a qualified immunity only if he did not know what he did was in violation of federal law *and* if a competent public official could not have been expected at the time to know that the conduct was in violation of federal law.

In deciding what a competent official would have know about the legality of defendant's conduct, you may consider the nature of defendant's official duties, the character of his official position, the information which was known to defendant or not known to him, and the events that confronted him. You must ask yourself what a reasonable official in defendant's situation would have believed about the legality of defendant's conduct. You should not, however, consider what the defendant's subjective intent was, even if you believe it was to harm the plaintiff. You may also use your common sense. Only if you find that a reasonable official in defendant's situation would believe his conduct to be lawful will this element be satisfied.

The burden of proof on the question of qualified immunity rests with the defendants, who raised the issue. Here, the Trooper Defendants contend that, before they seized the firearms, they were advised by certain Dutchess County Assistant District Attorneys that they could lawfully seize those firearms, notwithstanding the fact that firearms were not listed on the search warrant as items to be seized. The Trooper Defendants contend that it was reasonable for them to rely on the advice of the Assistant District Attorneys. The plaintiffs deny that the defendants received any such advice and contend that, even if they did, reliance on same was not reasonable.

Whether the Trooper Defendants received advice from the Assistant District Attorneys is a matter of fact for you to determine. I instruct you that advice may not be inferred or given by silence; advice, to be advice, must be given affirmatively, not by silence or inaction.

If you conclude, based on a preponderance of the credible evidence in this case, that one or more Assistant District Attorneys advised the Trooper Defendants that it was lawful for them to seize the firearms, then you must decide whether that fact entitles the particular defendant to qualified immunity under the instruction I just gave—that is, whether the defendant acted in an objectively reasonable manner under the circumstances in that he did not know that what he did was in violation of federal law, and that a competent public official could not have been expected at that time to know that the conduct was unlawful.

Again, this issue is dispositive. If you find that any particular defendant seized these guns but that he is entitled to qualified immunity, then you will find for that defendant with respect to the claim of illegal seizure of the guns.

If you find that any particular defendant seized these guns but that he is not entitled to qualified immunity, then you must find for the plaintiff with respect to the claim of illegal seizure of the guns.

Of course, if you find that any particular defendant was not involved in seizing the guns, you will never get to the question of qualified immunity; you will simply find for that particular defendant.

I remind you of the rule that police officers have an affirmative duty to stop other police officers from violating the law. That rule applies if you find that one of the defendants unlawfully seized items, or conducted and unreasonable search, and if you further find that another defendant was in a position to and had the ability to stop the unreasonable search or seizure but did not.

Jury Charge, pp. 28–30, attached as Ex. D to Oliver Aff.

Counsel for the plaintiffs objected to the submission of any qualified immunity instruction to the jury, arguing that qualified immunity was a question of law that the Court should decide. (*See* Letter Brief of Lewis B. Oliver, Jr., dated January 22, 1999, at pp. 13–14, attached as Ex. C to Oliver Aff. ("Oliver Letter Brief").) Plaintiffs' counsel submitted that, even if there was an issue of fact as to whether the ADAs gave any advice to the trooper defendants, the testimony of the troopers themselves rendered the issue not to be one of *material* fact because the troopers did not testify about the substance of any advice that would have made it objectively reasonable for them to have believed that seizure of the guns was legal. After reserving on the plaintiffs' motion, the Court sent the qualified immunity issue to the jury, clearly setting forth for it the factual issues to be decided.

The jury was given a copy of the substantive jury instructions, and was also provided with a Verdict Form. The Verdict Form was prepared by the Court when, despite my requests to counsel during the trial for proposed verdict forms, both sides failed to submit anything. The Verdict Form presented to the jury read as follows:

1. Did the defendant [ ] unlawfully seize any items during a search of the premises known as Manny's of Fishkill on January 29, 1992?

    YES        NO

2. Did the defendant [ ] conduct the search of Manny's of Fishkill in an unreasonable manner?

    YES        NO

3. If your answer to either Question 1 or 2 is YES, did [the] defendant [ ] act intentionally or recklessly in seizing the firearms or in so conducting the search?

    YES        NO

4. If your answer to either Questions 1 or 2 and Question 3 is YES, were [the] defendant's [ ] actions the proximate cause of any injuries sustained by Manuel Alvarez or Catherine Alvarez?

    YES   .  NO

5. If your answer to Questions 1 or 2 and 3 and 4 is YES, what compensatory damages do you award to Manuel and Catherine Alvarez as against defendant [ ] on this claim?

To Manuel Alvarez in the amount of ____

To Catherine Alvarez in the amount of ____

6. Do you find that any actions for which you have found defendant [ ] liable under this claim were done either maliciously or wantonly?

    YES        NO

7. If your answer to Question 6 is YES, do you award punitive damages to plaintiffs?

    YES        NO

To Manuel Alvarez in the amount of _____

To Catherine Alvarez in the amount of _____

Verdict Form, attached as Ex. E to Oliver Aff.

Plaintiffs' counsel objected, during the January 26, 1999 final charge conference, to the inclusion and positioning of the "intentionally or recklessly" question on the Verdict Form (Question 3), arguing that there was no issue of intent with respect to the search or the seizure and that the question was therefore irrelevant and confusing. (Tr. 1235 lines 5 – 11.) Unfortu-

nately, the Court denied plaintiffs' request to omit Question 3. (Tr. 1235 line 12.) Plaintiffs also objected to the "State of Mind" jury instruction, arguing that the defendants need not have any specific intent to deprive the plaintiffs of their civil rights in order for the plaintiffs to recover. (*See* Oliver Letter Brief, at p. 13.) Plaintiffs' request to omit or change the State of Mind instruction was also denied. (Tr. 1142 lines 8 – 10.)

At the end of its deliberations, the jury recorded its verdict by responding to the questions on the Verdict Form. The jury answered "YES" to Question 1 with respect to both defendants Schraff and Borbolla, concluding that they had "unlawfully seized" items from Manny's of Fishkill on January 29, 1992. However, in response to Question 3, the jury answered "NO", indicating that they found that the defendants did not act intentionally or recklessly in seizing the firearms. Because the verdict sheet instructed them to go no further, the jury did not reach the question of damages.

### The instant motion

Plaintiffs have timely renewed their application for judgment as a matter of law on the unlawful seizure claim against defendants Schraff and Borbolla.

*Standard for Judgment as a Matter of Law Pursuant to Federal Rule 50(a) and (b)*

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, a party that made a motion for judgment as a matter of law during the trial can renew that motion after the jury returns a verdict. Under Rule 50:

(a) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the

controlling law be maintained or defeated without a favorable finding on that issue.

(b) If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than ten days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59. . . .

Fed.R.Civ.P. 50.

The standard for judgment as a matter of law at the close of evidence and after a jury's verdict is the same as the standard for summary judgment. *Piesco v. Koch,* 12 F.3d 332, 341 (2d Cir.1993); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (summary judgment standard "mirrors the standard for a directed verdict under [Rule 50(a) ]"); *Eastman Machine Co. v. United States,* 841 F.2d 469, 473 (2d Cir.1988) (standards are the same for summary judgment, directed verdict, and judgment n.o.v.); 1991 Advisory Committee Note to amendment of Fed.R.Civ.P. 50 (recent adoption of the term "judgment as a matter of law" to replace both the term "directed verdict" and the term "judgment n.o.v." was intended to call attention to the close relationship between Rules 50 and 56).

In assessing a motion for judgment as a matter of law, "[t]he trial court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury." *Maiorana v. United State Mineral Prods. Co.,* 52 F.3d 1124, 1131 (2d Cir.1995) (*quoting Mattivi v. South African Marine Corp, "Huguenot",* 618 F.2d 163, 167 (2d Cir.1980)); *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970 (2d Cir.1987). The Court must view

the evidence in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in the non-movant's favor. The Court may grant the motion only if: (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against it. *See, e.g., Caruolo v. AC and S, Inc.,* No. 93–CV–3752, 1999 WL 147740, at * 2 (S.D.N.Y. March 18, 1999) (*citing Cruz v. Local Union Number 3 of IBEW,* 34 F.3d 1148, 1154 (2d Cir.1994); *Milbank, Tweed, Hadley & McCloy v. Boon,* 13 F.3d 537, 542 (2d Cir.1994); *Samuels v. Air Transport Local 504,* 992 F.2d 12, 14 (2d Cir. 1993); *Mattivi v. South African Marine Corp., "Huguenot",* 618 F.2d 163, 168 (2d Cir.1980)).

In this case, there is a complete absence of evidence supporting a finding of unintentional seizure. Since the jury found that the guns were unlawfully seized, plaintiffs are entitled to judgment as a matter of law.

*The Intent Issue*

The plaintiffs contend that the inclusion of Question 3 on the Verdict Forms was a plain error of law. They are correct. Based on the evidence, there was no question that the guns were seized deliberately, and thus there was no issue of fact to submit to the jury regarding intent. Defendants Schraff's and Borbolla's testimony at trial indisputably showed that they seized the guns on purpose and not by accident. Defendant Schraff testified that he seized guns and that he was aware of the seizure of guns by Investigator Borbolla and possibly by other officers. (Tr. 702 lines 7 – 14; Tr. 779 line 9 – 780 line 23.) Defendant Borbolla testified that he seized guns after inspecting them and writing out a list of the guns and their serial numbers. (Tr. 836 lines 6 – 10; Tr. 848 lines 5 – 8.) Defense counsel never argued that the sei-

zure was other than a conscious, deliberate act. Indeed, as the plaintiffs note, the defendants' testimony that they took the guns because the ADAs advised them to is fundamentally inconsistent with the jury's finding that the defendants did not take the guns intentionally.

The "State of Mind" jury instruction may have added to the jury's confusion. That instruction, adapted from a pattern "State of Mind" instruction used in many types of § 1983 actions, directed the jury that it was to return a verdict for the trooper defendants if their acts were merely "negligent," rather than "intentional or reckless." The instruction correctly stated that "[a]n act is intentional if it is done knowingly, that is, if it is done voluntarily or deliberately and not because of mistake, accident, negligence or any other innocent reason." (Jury Charge, p. 31, attached as Ex. D to the Affidavit of Lewis B. Oliver.) However, the remainder of the instruction was inconsistent and superfluous. It stated in part that:

> ... In determining whether a defendant acted with the requisite knowledge, you should remember that while witnesses may see and hear and so be able to give direct evidence of what a person does or fails to do, there is no looking into a person's mind. Therefore, in order to determine a person's intent or recklessness, you have to depend on what was done and what the people involved said was in their minds and your belief or disbelief with respect to those facts.
>
> ...
>
> An act is negligent if the defendant was under a duty or obligation, recognized by law, that required him to adhere to a certain standard of conduct to protect others against unreasonable risks, and he breached that duty or obligation.

Jury Charge, p. 31, attached as Ex. D to Oliver Aff.

The instruction provided a correct definition of "intentional" as "knowing," and

should have stopped there. The intent that is relevant to an unlawful seizure claim simply requires the finder of fact to decide whether a defendant's actions—here, the seizure of items beyond the scope of the search warrant—were committed purposely or knowingly, rather than accidentally or unknowingly. In other words, if the defendants believed they were seizing a box of gun sale records (items they were authorized to seize under the search warrant), but in the box, underneath the records, there were some hidden guns of which defendants were not aware, then the seizure of the guns would have been accidental, not intentional. On the other hand, if the defendants *knew* they were seizing guns, such seizure was necessarily intentional.

No reasonable juror could find, based on the evidence presented at the trial, that Investigators Schraff's and Borbolla's seizure of the Alvarezes' guns was done unintentionally. Therefore, the jury's response to Question 3 could only have been the result of a misunderstanding of the instruction given to them. I therefore grant judgment as a matter of law on the intent issue, and disregard the jury's "NO" answer to Question 3, because the trial testimony of the defendants themselves incontrovertibly established that defendants Schraff and Borbolla knowingly—i.e., intentionally—seized guns from Manny's of Fishkill on January 29, 1992. On this evidence, there was only one possible answer to Question 3, and it was not "NO." Given that, judgment as a matter of law on liability for the seizure is warranted, unless the issue of qualified immunity remains open. It is to that issue that I now turn.

*The qualified immunity issue*

■  The plaintiffs argue that the jury's verdict—i.e., its response to Question 1—encompasses a finding that defendants Schraff and Borbolla seized guns unlawfully and that they are not entitled to qualified immunity because the seizure was not objectively reasonable under the circumstances. The plaintiffs therefore argue that the jury's answer to Question 1 entitles them to a judgment of liability on the seizure claim. Before me also is plaintiffs' motion, on which I reserved decision during trial, to dismiss the qualified immunity defense as a matter of law.

After a thorough review of the evidence presented at trial, I am inclined to grant the plaintiffs' motion to dismiss the qualified immunity defense as a matter of law. I need not do so, however, because, by their answer to Question 1, the jury necessarily decided that the defendants were not entitled to qualified immunity. What is more, both the plaintiffs and defendants *agree* that the jury's response to Question 1 indicates they found that the defendants were are not entitled to qualified immunity. I need go no further than to agree myself.

In opposition to plaintiffs' post-trial motion, the defendants argue that the jury's verdict should be upheld. The gist of defendants' argument is that the jury's verdict—its responses to Questions 1 and 3—is harmonious. Defendants state that "a finding that the defendants' actions were not 'objectively' reasonable in terms of qualified immunity is not inconsistent with a finding that these defendants, in terms of § 1983 liability, did not act either intentionally or recklessly." (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Judgment as a Matter of Law or for a New Trial ("Defendants' Brief"), at p. 11.) Defendants continue, " . . . based on the evidence at trial, the jury could have found that a reasonable officer would have known that he could not seize the firearms despite what the Assistant District Attorneys present advised them, but after assessing the credibility of all the witnesses, the jury could properly conclude that *these* defendants seized the weapons based on an 'innocent reason'—the Assistant District Attorney's instructions—and therefore, they did not act intentionally or recklessly." (Defendants' Brief, at p. 12.)

Defendants' argument makes absolutely no sense. There is no "innocent reason" defense to unlawful seizure. Moreover, the jury was explicitly instructed (without objection from the defense) that the question of whether the ADAs gave any advice, and the objective reasonableness of that advice, went to the issue of *qualified immunity.* (*See* Jury Instruction on Qualified Immunity Defense, attached as Ex. D to Oliver Aff., at pp. 28–30.) The erroneously worded State of Mind jury instruction said nothing about the ADAs. The State concedes that the jury found that no reasonable officer would have seized the guns. The inquiry on qualified immunity ends there.

The defendants argue alternatively that the jury's "YES" response to Question 1 indicated that defendants had conducted an unlawful seizure (i.e., beyond the scope of the warrant) but the jury's "NO" response to Question 3 represented a determination that they were entitled to qualified immunity on the seizure claim. (Defendants' Brief, at p. 13, fn. 4.) However, the intent question bears no relationship whatsoever to the question of qualified immunity. The jury instructions make that eminently clear. The jury was instructed, in the qualified immunity charge, that the defendants seizure of the guns *presumptively violated the Fourth Amendment.* Thus, any individual officer who was found by the jury to have seized guns had presumptively acted *illegally.* The jury was then instructed that a defendant would be entitled to qualified immunity only if he neither knew nor should have known that his actions were contrary to federal law, and if his actions were objectively reasonable under the circumstances. Additionally, the jury was told that it should not consider the defendants' subjective intent when deciding about qualified immunity. Finally, the instruction (to which defendants made no objection) ended by specifically telling the jurors that, if the defendants had qualified immunity, then the jury *must* find for the defendants with respect to the *illegal seizure of the guns,* while they *must* find for the plaintiffs with respect to the claim of *illegal seizure of the guns* if the defendants did not enjoy qualified immunity. (*See* Jury Charge, at p. 30, attached as Ex. D to Oliver Aff. (emphasis added).) In light of the explicit instruction they received, the jury's response that the guns were seized unlawfully (which is synonymous with illegally) necessarily meant that defendants Schraff and Borbolla were not entitled to qualified immunity. Defendants actually concede that the response to Question 1 *does* encompass such a finding. (Defendants' Brief, at p. 11.)

The only defense available to the defendants at the time this case was given to the jury was the qualified immunity defense. That defense turns on an assessment of objective reasonableness. The evidence supports the jury's finding of no qualified immunity, and I have no reason to overturn that finding. To the extent that there was inconsistency between the jury's responses to Questions 1 and 3, that inconsistency is eliminated by my finding as a matter of law that the guns were seized intentionally. Question 1, viewed in light of the jury instructions, was intended to, and does, address the question of whether or not defendants are entitled to qualified immunity from liability for the presumptively unconstitutional seizure of plaintiffs' property; the jury instruction on qualified immunity made that clear. In fact, Question 1 could go to no other question in light of my direction to the jury that the seizure of the guns presumptively violated the Fourth Amendment. The plaintiffs are entitled to judgment as a matter of law on their claim for unlawful search and seizure based on the jury's finding of no qualified immunity.

A new trial is granted on the limited issue of damages resulting from the seizure. Jury selection will take place at 9:30 a.m. on August 2, 1999; the trial will take

place on August 4, 5 and (if necessary) 6. The parties should understand that there is only one issue remaining to be tried: the amount of damages suffered by the Alvarezes due to the seizure of the guns. If all the evidence from the first trial bearing on this discrete question is submitted, we should be able to conclude in one day.

This constitutes the decision and order of the Court.