**YURMAN DESIGN, INC., Plaintiff,**

**v.**

**PAJ, INC., d/b/a Art & Jewel, Defendant.**

**No. 98 CIV. 8697 RWS.**

United States District Court, S.D. New York.

April 11, 2000.

Pryor Cashman Sherman & Flynn, New York, NY (Maxim H. Waldbaum, Xuan–Thao N. Nguyen, Lori D. Greendorfer, Of Counsel), for Plaintiff.

Strasburger & Price, Dallas, TX (Molly Buck Richard, Elizann Carroll, Of Counsel), Corbin & Gittes, New York, NY (Peter T. Cobrin, Oren J. Warshavsky, Clyde A. Shuman, Of Counsel), for Defendant.

## OPINION

SWEET, District Judge.

On November 1, 1999, a jury found defendant PAJ, Inc. ("PAJ") liable for copyright infringement, trade dress infringement under the Lanham Act, and common law unfair competition. In separate motions, PAJ has moved (1) to set aside the jury's verdict concerning damages or, alternatively, for a new trial or remittitur of damages; and (2) for judgment as a matter of law on certain of plaintiff Yurman Design, Inc.'s ("Yurman Design") claims, or alternatively for a new trial. In its post-trial submissions, Yurman Design has also pressed, *inter alia*, for the issuance of a permanent injunction, the levying of pre-judgment interest, and the imposition of attorney's fees and enhanced damages. Yurman Design has also asserted its entitlement to an accounting of PAJ's profits in connection with its Lanham Act claim.

Also before the Court is Yurman Design's motion, submitted prior to trial, for sanctions in connection with PAJ's deposition of Sybil Yurman.

For the reasons set forth below, these motions are granted in part and denied in part.

### Facts and Prior Proceedings

On December 8, 1998, Yurman Design filed its complaint in this action. A designer and manufacturer of fine jewelry, well known within design and retail circles for its signature "cable" creations, Yurman Design contended that PAJ had intentionally copied certain of its copyrighted jewelry pieces, and that other PAJ designs improperly infringed upon Yurman's distinctive "trade dress." The artistic force behind Yurman Design, David Yurman, is a well regarded designer of creative American jewelry.

After several bouts of contentious motion practice, Yurman's case was tried to a jury. Submitted to the jury were Yurman's claims of copyright infringement, trade dress infringement, and unfair competition under New York law.

On November 1, 1999, after seven days of trial, the jury rendered its verdict in this case, finding for Yurman on all counts. More specifically, the jury by special verdict annexed hereto as appendix A found that, with respect to Yurman's copyright claims: (1) Yurman was the owner of valid copyrights concerning the following jewelry designs: B4973 (Copyright Registration No. VA 643–194); B4977 (Copyright Registration No. VA 785–335); E4973 (Copyright Registration No. VA 785–334); E4395 (Copyright Registration No. VA 785–336); and B4809 (Copyright Registration No. VAu 254–365); (2) the following PAJ jewelry designs infringed upon Yurman's copyrighted designs: 65–0676–9700 (infringing upon B4973 and B4977); 68–4106–98 (infringing upon B4973 and B4977); 66–3584–9700 (infringing upon E4973); and 65–0679–1300 (infringing upon B4809), and that as to all of these infringing jewelry PAJ's infringement was willful.[1]

With respect to Yurman's Lanham Act claims, the jury found (1) that Yurman's jewelry designs were "inherently distinctive"; (2) that Yurman Design had established that its trade dress had become distinctive through evidence of secondary meaning; (3) that PAJ had used Yurman Design's trade dress, and that such use

---

1. The jury rejected, however, Yurman's claim that PAJ designs 65–3520–9800 and 68–4106–98 infringed upon Yurman's E4395.

was likely to cause confusion as to source; and (4) that Yurman had not abandoned its trade dress. More specifically, the jury found that the following PAJ jewelry designs infringed upon Yurman's trade dress: 65–0676–9700; 65–0679–1300; 66–3584–9700; 66–3520–9800; 68–4106–98; 65–0730–3500; 65–0729–1400; 65–0725–9800; 65–0678–2700; 65–0677–4500; 68–4107–13; 68–4108–98; 68–4596–19; 68–4491–16; 68–4492–15; 68–4493–14; 65–0689–9700; 66–3639–1300; 66–3638–1600; and 66–3521–1300.[2] As to all of these infringing jewelry pieces, the jury found that PAJ's infringement was willful, and that PAJ had not rebutted any presumption of customer confusion raised by that willful infringement.

Finally, because the jury's findings with respect to PAJ's willful infringement of Yurman Design's trade dress could also give rise to liability under New York's common law of unfair competition, the jury found PAJ liable for unfair competition.

With respect to damages, the jury awarded Yurman Design (1) statutory damages in the amount of $275,000 for PAJ's copyright infringement, and (2) $800,000 in punitive damages on Yurman Design's unfair competition claim. As to Yurman's Lanham Act claim, the jury awarded Yurman Design no damages.

After allowing ample opportunity for the parties to exchange briefing salvos, oral argument was heard on January 19, 2000, at which time the motions were deemed fully submitted.

Also considered in the present opinion is a request by Yurman for costs in connection with the deposition of Sybil Yurman. Submitted in letter form, and treated by the court as a motion, final resolution of this motion was delayed until after trial.

## Discussion

The parties' lengthy briefing in this case provides some indication of the vigorous manner in which this action has been litigated.

In its post-trial motions, PAJ contends that it is entitled to judgment as a matter of law because (a) the works registered in Copyright Registration No. VAu 254–365 are not sufficiently related to qualify for single registration; (b) Yurman's copyrights were not infringed as a matter of law, given Yurman Design's failure to show "substantial similarity" between PAJ jewelry designs and the protectable elements of Yurman Design's pieces; (c) the "merger" doctrine precludes Yurman Design's recovery for copyright infringement, as allowing such recovery would impermissibly monopolize basic designs that are already in the public domain; (d) Yurman Design failed to articulate the trade dress for which it sought protection; and (e) Yurman Design's claimed trade dress cannot act as a source identifier. PAJ claims that, notwithstanding its entitlement to judgment as a matter of law, it is entitled to a new trial because (a) Yurman Design's copyrights are invalid for want of originality; (b) Yurman Design's trade dress is neither inherently distinctive nor has it acquired secondary meaning; (c) Yurman's use of side-by-side comparisons in presenting its trade dress claims to the jury was improper; and (d) the Court improperly admitted testimony from third party lay witnesses. PAJ also asserts its entitlement to a new trial because the jury's finding of willful infringement was against the weight of the evidence, and presses that Yurman Design's claim for unfair competition fails because PAJ failed to demonstrate actual confusion on the part of consumers.

With respect to damages, PAJ presses that (1) the jury's award of statutory damages on Yurman Design's copyright claims was improper, as such damages were not reasonably related to the harm visited upon Yurman Design; (2) the jury's award

---

**2.** The jury rejected Yurman's claim that PAJ design 68–4113–13 infringed upon Yurman's trade dress.

of punitive damages was inappropriate, given that the jury was not aware of any actual damages in this case; (3) that the jury's award of punitive damages must be reversed or reduced under the doctrine of preemption; and (4) that even if the punitive damages award is allowed to stand, it should be reduced given its excessive nature.

In addition to seeking a permanent injunction, Yurman Design has pressed its entitlement to (1) costs and attorney's fees under the Copyright Act, 17 U.S.C. § 505; (2) pre-judgment interest from the date of first infringement under the Copyright Act; (3) both an accounting of PAJ's profits and enhanced damages under the Lanham Act, 15 U.S.C. § 1117; (4) attorney's fees in connection with its trade dress claims under the Lanham Act; and (5) attorney's fees under New York's unfair competition law.

## I. *The Standards Governing PAJ's Post–Trial Motions*

Pursuant to Rule 50, Fed.R.Civ. P., a party that has made a motion for judgment as a matter of law at trial may renew that motion after the jury returns a verdict. *See Braun Inc. v. Optiva Corp.,* No. 98 Civ. 4070(RCC), 2000 WL 223840, at *1 (S.D.N.Y. Feb. 25, 2000). The standard for post-verdict judgment as a matter of law is analogous to the standard applicable to a judgment at the close of the opposition's case. *See Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 696, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); *Diebold v. Moore McCormack Bulk Transport Lines, Inc.,* 805 F.2d 55, 57 (2d Cir.1986). Explaining the standard, the Court of Appeals has stated that the guiding principle is whether:

> viewed in the light most favorable to the non-moving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.

*Sir Speedy, Inc. v. L & P Graphics, Inc.,* 957 F.2d 1033, 1038–39 (2d Cir.1992) (citations omitted). A motion for judgment as a matter of law may therefore be granted only where either: "(1) there is such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result of sheer surmise and conjecture; or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it." *Braun,* 2000 WL 223840, at *1 (*citing Samuels v. Air Transport Local 504,* 992 F.2d 12, 14 (2d Cir.1993); *Alvarez v. Abreau,* 54 F.Supp.2d 335, 344 (S.D.N.Y.1999)). In considering whether a defendant is entitled to judgment as a matter of law, a court must consider all of the evidence in the light most favorable to the nonmovant, and cannot substitute its own judgment for that of the jury, which itself has already had an opportunity to pass upon the credibility of witnesses and weigh conflicting evidence. *See Ortho Diagnostic Sys., Inc. v. Miles, Inc.,* 865 F.Supp. 1073, 1078 (S.D.N.Y.1994), *appeal dismissed,* 48 F.3d 1237, 1995 WL 74663 (Fed.Cir.1995).

Rule 59, Fed.R.Civ.P., permits the granting of a new trial after an earlier trial by jury, and the decision whether to grant a new trial is "committed to the sound discretion of the trial judge." *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2d Cir. 1992). A motion for a new trial may be joined with a motion for judgment as a matter of law.

A trial judge reviewing a jury verdict and judgment pursuant to a motion for a new trial has greater judicial discretion to grant such a motion than a motion for judgment as a matter of law. *See Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251–52, 61 S.Ct. 189, 85 L.Ed. 147 (1940); *Bevevino v. M.S. Saydjari,* 574 F.2d 676, 683–84 (2d Cir.1978). Where the court is convinced that the jury has reached a seriously erroneous result or that the verdict is against the weight of the evidence, rendering any enforcement of its verdict a miscarriage of justice, the

court may order a new trial. *See Mallis v. Bankers Trust Co.,* 717 F.2d 683, 691 (2d Cir.1983); *Purnell v. Lord,* 952 F.2d 679, 686 (2d Cir.1992).

This being said, a trial court should not set aside a jury verdict merely because of its disagreement with the jury's resolution of credibility issues, or because the jury's findings were at some variance with the court's. *See Braun,* 2000 WL 223840, at *1; *Leotis v. City of New York,* 818 F.Supp. 63, 68 (S.D.N.Y.1993). A new trial should only be granted where the jury's verdict was "seriously erroneous," *Piesco v. Koch,* 12 F.3d 332, 345 (2d Cir.1993), or whether the verdict constitutes a "miscarriage of justice." *Purnell,* 952 F.2d at 686 (citations omitted).

 If a district court finds that a verdict is excessive, it may order a new trial, order a new trial limited to damages, or, under the practice of remittitur, condition denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount. However, it is not among the powers of the trial court, where the jury has awarded excessive damages, simply to reduce the damages without offering the prevailing party the option of a new trial. *See Tingley Systems, Inc. v. Norse Systems, Inc.,* 49 F.3d 93, 96 (2d Cir.1995); *Phelan v. Local 305,* 973 F.2d 1050, 1064 (2d Cir.1992) (observing that court should not decrease damages without affording option of new trial).

## II. *PAJ's Liability*

In its motions, PAJ has challenged the jury's findings concerning PAJ's liability in a number of respects. Because those challenges are best addressed by subject matter, Yurman Design's copyright and trade dress infringement claims will be addressed separately.

### 1. *PAJ Is Not Entitled To Judgment As A Matter Of Law Or A New Trial On Yurman Design's Copyright Claims*

In its papers, PAJ challenges both the underlying validity of Yurman Design's copyrights and the jury's finding of infringement. More specifically, with respect to underlying copyright validity PAJ contends that (1) the works covered by Copyright Registration No. VAu 254–365, which includes Yurman Design's B4809 piece, are not sufficiently related to qualify for copyright protection; and (2) notwithstanding the Court's determination concerning such "relatedness," Yurman's copyrights are invalid for want of originality, given that Yurman's products are "comprised or compiled of or derived from elements common throughout the jewelry industry," and "there is nothing substantially original in Yurman's particular arrangement of the functional, non-protectable elements" combined to form its pieces. With respect to infringement, PAJ claims that Yurman Design failed to show "substantial similarity" between PAJ's pieces and the protected elements of Yurman Design's pieces.

These challenges to the verdict fail. Not only was the jury presented with ample evidence from which it could be concluded that Yurman Design possessed valid copyrights in five of the jewelry designs submitted for the jury's consideration, but the jury was properly instructed with respect to the standards governing Yurman Design's copyright claims. While there is no question but that reasonable minds may disagree concerning such matters, such bona fide disagreement alone does not provide grounds for judgment as a matter of law.

To establish a copyright infringement cause of action, a plaintiff must demonstrate both ownership of a valid copyright and unauthorized copying on the part of the defendant. *See Hamil America, Inc. v. GFI,* 193 F.3d 92, 98 (2d Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000). A certificate of registration from the Copyright Office constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).

■■■ With respect to PAJ's first claim concerning the "relatedness" of the pieces covered by Copyright Registration No. VAu 254–365, the jury was instructed that, in order for multiple jewelry designs to be properly registered under a single copyright application, the individual designs must be sufficiently related to qualify for group registration—and that the jury was to consider whether the designs are variations on the same basic design, comparing size, shape, proportions and the like, whether the designs have the same basic distinguishing characteristics, and whether the designs bear a resemblance to one another. PAJ does not quibble with this instruction, as it indeed cannot, given that it believes the relatedness standard to be the same as that explained to the jury. *See Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 Civ. 3841(RWS), 1997 WL 639037, at *11 (S.D.N.Y.1997).

Instead, PAJ presses that the jury's evaluation of the relatedness of items covered by VAu 254–365 was in error, that VAu 254–365 includes numerous pieces of jewelry that do not contain distinctive characteristics, that the registration covers disparate pieces of jewelry decorated with a varied assortment of jewel stones, and that the shapes and sizes of the pieces are too varied to detect a cognizable pattern. In short, PAJ asks this Court to substitute its subjective evaluation of jewelry designs for that of the jury.

Setting aside the fact that a finding in PAJ's favor on this point would not necessarily preclude Yurman Design's recovery for infringement of the specific jewelry piece found to be covered by the group registration, B4809,[3] PAJ is not entitled to the relief it seeks. A review of the group registration at issue reveals that the jewelry pieces covered by the group registration are sufficiently related to survive PAJ's motion.

■■ With respect to the "originality" of Yurman Design's copyrighted designs, PAJ asserts that registration only constitutes *prima facie* evidence of a valid copyright registration, that Yurman Design's jewelry designs are "derivative" works, and that notwithstanding the fact that Yurman Design obtained registrations for the five copyrighted pieces at issue in this motion, there is nothing original in Yurman Design's arrangement of primary, unprotected design "elements" that would entitle Yurman Design to copyright protection.

To be sure, a certificate of registration only constitutes *prima facie* evidence of valid ownership of a copyright, and a defendant in an infringement action may rebut any presumption of validity raised by such registration. *See Hamil America*, 193 F.3d at 98. Originality, it is often remarked, is the *sine qua non* of copyright law, *see Feist Pubs., Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991), and copyright protection only extends to those aspects of a registrant's works that are original to the "author" of the work.

PAJ has pressed that Yurman Design's pieces are comprised, compiled, or derived of elements commonly used throughout the jewelry industry, and that such common elements are not themselves copyrightable. Moreover, PAJ contends that there is nothing original in Yurman's arrangement of these elements that could give rise to copyright protection. In jewelry terms, for example, PAJ suggests that Yurman Design's use of particular gemstones is not itself copyrightable, and that standard arrangements—such as the use of a larger gemstone on cable flanked by two smaller gemstones—cannot be protected under the Copyright Act.

3. *Cf. Hamil America*, 193 F.3d at 99 ("Moreover, even if Hamil America's recordation was initially inadequate, this alleged shortcoming did not justify dismissal of its copyright action. '[C]ourts have consistently permitted a plaintiff to correct a defective recordation, and to go forward with the suit as of the date of the filing of the action.'") (quoting *Northern Songs, Ltd. v. Distinguished Prods.*, 581 F.Supp. 638, 641 (S.D.N.Y.1984)).

"Derivative" work is defined by statute as work "based upon one or more preexisting works [that] ... as a whole represent[s] an original work of authorship ...." 17 U.S.C. § 101. "For a derivative work to have sufficient originality, its variation from the work from which it is derived must be 'substantial' in nature, not 'merely trivial.'" *Gibson Tex, Inc. v. Sears Roebuck & Co.*, 11 F.Supp.2d 439, 442 (S.D.N.Y.1998) (*quoting L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir.1976)). However, while "this seems a difficult standard to meet, the requirement of substantial change is not much more than a 'prohibition of mechanical copying,'" and "[a]ll that is required is a 'distinguishable variation' from the original." *Id.* (citations omitted). Moreover, as a general matter, the originality demanded by the Copyright Act is not especially onerous. As the Supreme Court explained in *Feist Publications:*

> To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, "no matter how crude, humble, or obvious" it might be. Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.

499 U.S. at 345–46, 111 S.Ct. 1282.

PAJ is, of course, correct that copyright protection in derivative works only extends to the author's original creative contribution. *See Gibson Tex,* 11 F.Supp.2d at 443 n. 2. However, the conclusions to be drawn from this assertion are not altogether clear. While it is true that copyright protection does not extend to the discrete, unoriginal elements themselves, in evaluating "derivative" works or "compilations" the courts have traditionally rebuffed efforts by defendants to parse the protected works in the hopes of atomizing the Court's inquiry.[4]

While PAJ's position is that none of Yurman Design's jewelry is protectable under the Copyright Act, because Yurman Design's pieces simply contain basic elements (jewels, cabochons, cable, gold and silver, etc.) commonly used throughout the jewelry industry, such a position would, writ large, swallow copyright law whole. To accept PAJ's argument that Yurman's pieces of jewelry are merely unprotectable agglomerations of basic design elements already within the public domain would be akin to accepting the position that every song is merely a collection of basic notes, every painting a derivative work of color and stroke, and every novel merely an unprotected jumble of words. *Cf. Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1003 (2d Cir.1995) ("As the district court noted, if we took this argument [that court was required to dissect copyrighted designs into separate components] to its logical conclusion, we might have to decide that 'there can be no originality in a painting because all colors or paint have been used somewhere in the past.'").

The degree to which a particular jewelry item will contain protected arrangements of elements will certainly vary, and it goes without saying that not all jewelry pieces will contain the spark of originality that is itself unique. *See Feist,* 499 U.S. at 348, 111 S.Ct. 1282. Copyright protection under such circumstances extends only to those aspects of the work that are original to the author. *See id.*

---

4. For example, with respect to factual compilations, the Supreme Court has held that the selection and arrangement of otherwise unprotected facts may perhaps constitute a work protected by the Copyright Act, provided that the selection or manner of arrangement is

required by our copyright law. However, the jury had before it the specific designs in question. It had an opportunity to hear testimony concerning the prior use and combination of similar elements, as well as testimony concerning the originality of David Yurman's designs. In the end, it concluded that the five designs at issue with respect to Yurman Design's copyright claims were, in fact, original. It was entitled to so find.

■ Similarly, the jury was entitled to find that the four pieces in question were infringed by PAJ's jewelry designs.

To prove copyright infringement, a plaintiff with a valid copyright must demonstrate that the defendant has copied the plaintiff's work, and that the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's work. *See Hamil America,* 193 F.3d at 99; *Knitwaves,* 71 F.3d at 1002.

PAJ has pressed that, as derivative works, Yurman Design's copyrighted pieces are only entitled to protection as to those features that are original to Yurman. PAJ urges that an evaluation of whether "substantial similarity" between the works in question and PAJ's allegedly infringing works requires one to utilize the "more discerning" ordinary observer test set forth by the Second Circuit in *Folio Impressions v. Byer California,* 937 F.2d 759, 766 (2d Cir.1991), and that the proper application of that test yields the conclusion that PAJ's pieces are not substantially similar to Yurman's pieces as a matter of law.

However, as the Second Circuit observed in *Hamil America,* 193 F.3d at 101–02, application of the "more discerning" ordinary observer standard would appear to be the exception rather than the rule, and even where it is properly applied that standard does not demand that the constituent elements of a copyrighted work be parsed and considered separately:

As we have subsequently cautioned, *Folio Impressions* featured "rather specialized facts" and provides no authority for the broad proposition that "in comparing designs for copyright infringement, we are required to dissect them into their separate components, and compare only those elements which are in themselves copyrightable."

*Id.* at 102 (*quoting Knitwaves,* 71 F.3d at 1003). As the Second Circuit similarly observed in *Knitwaves,* even the "more discerning" standard does not require a court to engage in the "mechanical" and "counterintuitive" exercise of considering each individual element of a copyrighted work separately—especially given that a work may be copyrightable even though it is entirely a compilation of unprotectable elements. 71 F.3d at 1003 (observing that "[i]t is commonplace that in comparing works for infringement purposes—whether we employ the traditional 'ordinary observer' test or the *Folio Impressions* 'more discerning' inquiry—we examine the works' 'total concept and feel.' "; noting that "differences in detail, while requiring considerable ink to describe, do little to lessen a viewer's overwhelming impression that the two ... sweaters are appropriations of the Knitwaves sweaters") (*quoting Eden Toys, Inc. v. Marshall Field & Co.,* 675 F.2d 498, 500 (2d Cir.1982)).

As with the jury's evaluation of originality, the jury's evaluation of substantial similarity involves a complex and perhaps inarticulable evaluation of the jewelry designs at issue in this case and, given the similarity of the jewelry pieces' "total concept and feel," that evaluation does not appear to be in error. *Knitwaves,* 71 F.3d at 1004; *see Blue Ribbon Pet Prods. v. Rolf C. Hagen (USA) Corp.,* 66 F.Supp.2d 454, 461 (E.D.N.Y.1999) (concluding that "whether viewed by the ordinary observer or by the more discerning observer (considering only the protectable elements), the 12 Relics ornaments at issue are substantially similar to their counterpart copyrighted three-dimensional Exotic En-

vironments ornaments . . ., given the close resemblance of the ornaments in color, shape, configuration, and overall appearance, and in the particular expression of their concepts"). PAJ has not challenged the jury's instructions, the jury had an opportunity to compare the jewelry pieces first-hand, and nothing in the record gives the Court reason to second guess its assessment of substantial similarity. A jury comprised of laypersons is well able to evaluate such claims and to distinguish between protected and unprotected aspects of particular works. Indeed, the fact that the jury rejected Yurman Design's claim that PAJ items 65–3520–9800 and 68–4106–98 infringed upon Yurman Design's E4395 indicates that it carefully compared the protected and unprotected aspects of Yurman's designs, and that it took its task seriously.

■ PAJ presses that judgment as a matter of law is required because of the "merger doctrine," which holds that to the extent that the expression itself merges with the "idea" manifested in that expression, protection of the expression is precluded. *See Kregos v. Associated Press,* 3 F.3d 656, 663 (2d Cir.1993). It has also been observed that similarity of expression which necessarily results from the fact that the common idea is only capable of expression in more or less stereotyped form will preclude a finding of actionable similarity. *See* 4 Nimmer § 13.03[B][3], at 13–69; *see also Gibson Tex,* 11 F.Supp.2d at 443–44 ("Thus, it is possible that any similarities between Gibson's and LAI's designs are the result of inevitable congruities rather than indicia of copying."). In other words, if in order to express a common idea it is necessary to manifest that idea in a particular format, and that format is itself substantially similar to a plaintiff's copyrighted work, then substantial similarity between works does not itself give rise to an inference of copying.

■ However, in this case this doctrine does not apply. Not only are multiple design options open to jewelry manufac-

turers, but the similarities between Yurman Design's jewelry and PAJ's jewelry are not attributable to the "inevitable congruities" between all jewelry designs. Moreover, the similarities between Yurman Design's pieces and PAJ's pieces are not merely attributable to the nature of the product, or the fact that both companies' designs make use of standard elements—such as cabochons, endcaps, and gemstones. *But see William S. Geiger Corp. v. Gigi Accessories, Inc.,* No. 97 Civ. 5034(JSM), 1997 WL 458668, at *2 (S.D.N.Y. Aug. 11, 1997) (holding that any similarities between jewelry pieces was solely attributable to use of unprotected floral elements, and that "one does not have to be a judge or a lawyer to recognize that the similarity results from the nature of the product not from the fact that defendants have copied plaintiff's design").

■ Finally, the jury was presented with ample evidence that PAJ's infringement was willful. The jury heard evidence, for example, that PAJ had based its allegedly infringing pieces upon jewelry samples obtained under circumstances that would have put a reasonable jewelry designer on notice that it was potentially infringing, and PAJ's explanation of the circumstances under which it came to produce the infringing pieces was not entirely satisfactory. Specifically, PAJ's relationship with Zales and the manner in which it obtained jewelry samples raised serious questions concerning PAJ's awareness of, or recklessness regarding potential infringement. Moreover, Yurman Design submitted evidence from which a reasonable jury could conclude that PAJ represented itself on copyright applications as the author of particular infringing pieces, even when it already knew that it was not the author of the designs in question. Such evidence supports the jury's finding of willfulness. *See Knitwaves,* 71 F.3d at 1010 (noting that defendant's use of plaintiff's sweaters as models supported finding of willfulness, despite defendant's contention that its designers intended to copy

only those elements of plaintiff's designs that were unprotected).

As the Second Circuit held in *Knitwaves*, 71 F.3d at 1010, a plaintiff is not required to prove that a defendant had actual knowledge that it was infringing. "Knowledge of infringement may be constructive rather than actual," *id.*, after all, and infringement has been held to be "willful" where defendants either act with knowledge that their actions constitute infringement or act with reckless disregard of the copyright owner's rights. *See Almond Int'l, Inc. v. Arpas Int'l Ltd.*, No. 98 CIV. 2355(JSM), 1999 WL 476287, at *1 (S.D.N.Y. July 8, 1999).

### 2. *PAJ Is Not Entitled To Judgment As A Matter Of Law Or A New Trial On Yurman's Lanham Act Claims*

PAJ has also assailed the jury's findings concerning the protection of Yurman's "trade dress" and any infringement thereof on the part of PAJ. More specifically, PAJ has claimed that (1) Yurman Design failed to establish a protectable trade dress as a matter of law, given that Yurman Design could not offer the jury any coherent, clearly articulated explanation of "exactly the aspects of the product design which make the product protectable"; (2) Yurman Design's claimed trade dress cannot act as a source identifier, given that PAJ introduced "significant evidence of jewelry by companies other then Yurman and PAJ that use the same elements as Yurman," as well as the fact that Yurman has previously consented to certain companies' "continued sale of silver cable jewelry with gold accents and/or jeweled endcaps"; and (3) Yurman Design's trade dress is neither inherently distinctive nor has obtained secondary meaning. PAJ has also raised objections to Yurman's use, at trial, of side-by side comparisons of PAJ's jewelry and its jewelry, claiming that such a presentation "sets an inappropriate standard for judging likelihood of confusion between products."

This Court recently had occasion to address the history of trade dress protection, and the standards governing claims of trade dress infringement under the Lanham Act are familiar. *See Best Cellars, Inc. v. Grape Finds at Dupont, Inc.*, 90 F.Supp.2d 431, ——, 2000 WL 343083, at *18–27 (S.D.N.Y.2000).

As the Second Circuit explained in *Knitwaves*, trade dress protection has expanded over the years to cover product design as well as product packaging:

> While "trade dress" at one time "referred only to the manner in which a product was 'dressed up' to go to market with a label, package, display card, and similar packaging elements," the concept "has taken on a more expansive meaning and includes the design and appearance of the product as well as that of the container and all elements making up the total visual image by which the product is presented to customers."

71 F.3d at 1004 (*quoting Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir.1995)).

At the outset, it is worth noting that PAJ has not challenged this Court's instructions at trial concerning Yurman Design's Lanham Act claims. By way of those instruction, which were carefully crafted and reviewed by both of the parties, the Court took great pains to distinguish between Yurman Design's copyright claims and trade dress claims, and to force the jury to consider whether the jewelry designs in question were truly "indicative of the product's source." The Court was and is mindful of the difficulties inherent in distinguishing those protections afforded to marketplace participants under the Lanham Act from those protections afforded under the Copyright Act, and cautioned the jury that its inquiry was markedly different. While it may be an open question whether juries are capable of following instructions on such confounding issues as trade dress protection, the Court operates under the assumption that juries can

and will follow the instructions they are given. Consequently, while the Lanham Act obviously demands more than mere side-by-side comparisons, and does not penalize copying *per se,* Yurman Design's use of such comparisons does not entitle PAJ to a new trial.

Moreover, while PAJ has urged that the Supreme Court's welcome decision in *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.,* No. 99–150, 2000 WL 293238, 120 S.Ct. 1339, (Mar. 22, 2000), also requires judgment as a matter of law in its favor, a review of that decision reveals that trade dress protection may still be extended to product designs. In *Samara,* the Supreme Court merely held that a plaintiff seeking to establish a trade dress claim in connection with product design cannot do so merely by showing "inherent distinctiveness," and that a product's design is only protectable upon a showing of secondary meaning.

In this case, however, the jury found both that Yurman Design's trade dress was inherently distinctive and that it had obtained secondary meaning in the marketplace. There is enough evidence in the record from which a reasonable jury could so conclude, and the Court will not disturb the jury's verdict. While PAJ's arguments concerning the existence of evidence that would support a contrary result are well taken, the trier of fact has already had an opportunity to draw its own conclusions concerning these matters.

That a coherent and detailed description of Yurman Design's trade dress was not forthcoming poses significant problems for the Court in terms of fashioning injunctive relief. However, as with Yurman Design's copyright claims, the Court is unwilling to second guess the jury's determinations merely because the Court cannot operationalize the precise array of features that the jury took to constitute Yurman Design's protected trade dress.

It is not uncommon for courts to founder upon the rocky and uncertain shoals of intellectual property law, and the law of trade dress protection is no exception. Moreover, as the Court hinted to counsel during trial by way of its jury instructions, one must approach the expansion of product design trade dress protection with some degree of trepidation—lest every manufacturer or designer lay claim to a restrictive and anticompetitive monopoly. The Supreme Court's decision in *Samara,* which was anticipated to some degree, will hopefully temper the unbridled expansion of this area of the law.

However, rather than addressing PAJ's claims of error in seriatim, the Court holds merely that the jury was entitled to conclude from the information presented to it that Yurman Design possessed a protectable trade dress, and that PAJ infringed upon that trade dress. The jury was in as good a position as the Court to make a determination on this issue, and it would be neither in the interests of judicial economy nor of any real benefit to the parties to catalogue the evidence that would support its ultimate findings.

As with Yurman Design's copyright claims, the jury was also presented with evidence from which it could conclude that PAJ's infringement was willful.

Thus, PAJ's claims concerning the jury's finding of liability under the Lanham Act are rejected.

### III. *Damages, Attorneys' Fees and Costs*

#### 1. *Statutory Damages*

PAJ has challenged the jury's award of $275,000 in statutory damages to Yurman Design on its copyright claims. Those damages are improper, PAJ claims, because they are not reasonably related to the harm suffered by Yurman Design as the result of PAJ's infringement. PAJ notes in this regard that the jury was not presented with any evidence of actual damages suffered by Yurman, and that the total amount of profit earned by PAJ on the entire line of jewelry subject to Yur-

man's claims in this lawsuit was only $19,-000. Even assuming, *arguendo*, that this $19,000 figure constituted PAJ's profits on specific pieces ultimately found to be infringing, PAJ claims, the jury's award gives Yurman Design an undeserved windfall.

Under the Copyright Act, a copyright holder may elect to recover either "actual damages and profits", 17 U.S.C. § 504(b), or "statutory damages" pursuant to 17 U.S.C. § 504(c). As the jury was instructed, statutory damages of not less than $500 and not more than $20,000 per copyright infringed may be imposed, though where the copyright owner sustains its burden of demonstrating that the infringement was willful those damages may be enhanced in an amount up to $100,000 per copyright infringed. *See* 17 U.S.C. § 504(c)(1)-(2); *Blue Ribbon Pet. Prods.*, 66 F.Supp.2d at 463. At trial, Yurman Design elected to seek statutory damages, and the jury was provided instructions concerning such damages.[5]

■ Between these two extremes, however, the jury has broad discretion. *See D.C. Comics Inc., v. Mini Gift Shop*, 912 F.2d 29, 34 (2d Cir.1990); *Dumas v. Dagl*, No. 88 Civ. 2293(LBS), 1990 WL 258343, at *4 (S.D.N.Y. May 22, 1990); *Video Aided Instruction, Inc. v. Y & S Express, Inc.*, No. 96 CV 518 CBA, 1996 WL 711513, at *3–4 (E.D.N.Y. Oct. 29, 1996). While evidence of actual damages has been looked to as a "springboard" for determining statutory damages, *see Dumas*, 1990 WL 258343, at *5, courts have also looked to a variety of other factors when considering a plaintiff's entitlement to statutory damages, such as a defendant's profits, the defendant's cooperation in providing records, and the demands of deterrence. The regime of statutory damages designed by Congress "not merely

compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct." *N.A.S. Import, Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir.1992).

That evidence concerning actual damages, such as lost profits, was not submitted by Yurman does not preclude its recovery of statutory damages. Statutory damages have been made available to plaintiffs in infringement actions precisely because of the difficulties inherent in proving actual damages and profits, as well as to encourage vigorous enforcement of the copyright laws.

■ In this case, the jury found PAJ's infringement to be willful, and a determination of statutory damages in the amount of $275,000 was not beyond their authority. Given its finding of willfulness, the jury could reasonably conclude that an award of that size was required to serve as both a specific and general deterrent to future infringement. *See Video Aided Instruction*, 1996 WL 711513, at *4 (awarding statutory damages in the amount of $40,-000 per infringement, despite fact that plaintiffs' lost revenue and defendants' profits from sale of infringing works remained uncertain). *But see Infinity Broadcasting Corp. v. Kirkwood*, No. 96 Civ. 0885 LAK, 1999 WL 706065, at *7 (S.D.N.Y. Sept. 8, 1999) (finding award of statutory minimum to be in order, given that plaintiff was not actually harmed by infringement, defendant had a well considered position that his activities did not constitute infringement, and there was no reason to suppose that substantial award was necessary for general or specific deterrence).

### 2. *Punitive Damages*

With respect to Yurman Design's unfair competition claim, which virtually tracked

---

5. It is worth noting that the question of statutory damages was put to the jury, rather than decided by the Court, given the Supreme Court's decision in *Feltner v. Columbia Pictures Television*, 523 U.S. 340, 118 S.Ct. 1279, 1288, 140 L.Ed.2d 438 (1998) (holding that

"the Seventh Amendment provides the right to jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself").

its Lanham Act claim, the jury awarded Yurman Design $800,000 in punitive damages. PAJ presses that this punitive damages award cannot stand because punitive damages simply are not available under New York law without a finding of actual damages. Alternatively, PAJ submits that the jury's award cannot stand because it is excessive, and because the jury's verdict on Yurman Design's unfair competition claim was also based on the same jewelry pieces found to be protected by copyright law.

■ It is not seriously contested that under New York law, punitive damages are available for a claim of unfair competition where a defendant has engaged in recklessness or willful infringement. *See Getty Petroleum Corp. v. Island Transportation Corp.*, 878 F.2d 650, 657 (2d Cir. 1989). Because Yurman Design's unfair competition claims essentially tracked its Lanham Act claims, and because the jury found both that PAJ's infringement was willful and that PAJ had not rebutted any inference of actual customer confusion raised by that finding of willfulness, the jury was entitled to find PAJ liable on Yurman Design's unfair competition claim.

■ However, as PAJ has correctly noted, the jury was not presented with any evidence concerning actual damages suffered by Yurman Design as a result of PAJ's infringement. Moreover, while the jury was presented with evidence that PAJ's total profit from its line of allegedly infringing jewelry was $19,000, in awarding Lanham Act damages the jury did not award Yurman Design any of PAJ's profits whatsoever.

Under such circumstances, the jury's punitive damages award cannot stand. *See Action House, Inc. v. Koolik*, 54 F.3d 1009, 1013 (2d Cir.1995) ("The district court's instructions on punitive damages were not consistent with New York law, which requires a finding of actual damages before punitive damages may be awarded."); *see also Maier–Schule GMC, Inc. v.*

*General Motors Corp.*, 850 F.Supp. 1095, 1104 (W.D.N.Y.1994) ("In order to justify an award of punitive damages there must be a showing of actual injury which would justify an award of actual or compensatory damages."), *aff'd*, 62 F.3d 1412 (2d Cir. 1995); *Ebker v. Tan Jay Int'l, Ltd.*, 741 F.Supp. 448, 471 (S.D.N.Y.1990) (same), *aff'd*, 930 F.2d 909 (2d Cir.1991).

■ Moreover, even if Yurman Design's entitlement to the punitive damages award was not foreclosed by the jury's failure to award any actual damages or profits, the Court would put Yurman Design to the choice between a new trial on damages or remittitur of the jury's punitive damages award. The jury's award is grossly excessive, especially when one considers it in conjunction with the jury's award of statutory damages on Yurman Design's copyright claims. The only plausible reference point for such damages would be the $19,000 figure referred to above, and while an award significantly in excess of that amount would certainly be appropriate to serve a punitive function, an award greater by a factor of 42 is inappropriate. *See Getty Petroleum Corp.*, 862 F.2d at 14.

### 3. *Attorney's Fees, Costs, and Enhanced Damages*

In its findings of Fact and Conclusions of Law, Yurman Design has requested that the Court award it attorney's fees and costs under both the Copyright Act and the Lanham Act, asserting that such an award is appropriate in light of PAJ's willful infringement. Yurman Design has also pressed its entitlement to prejudgment interest from the date of first copying in connection with its copyright claim, and both an accounting of defendant's profits and enhanced damages under the Lanham Act.

■ 17 U.S.C. § 505 provides that, in any copyright infringement action, the court "in its discretion may allow the recovery of full costs by or against any party

... [and] ·may also award a reasonable attorney's fee to the prevailing party as part of the costs." While prior to the Supreme Court's decision in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), courts both within and without this Circuit appeared to grant such fees and costs as a matter of course to prevailing plaintiffs, that decision made clear that attorney's fees and costs should not be automatically forthcoming where a plaintiff is successful in establishing copyright infringement. This being said, PAJ's willful infringement in this case merits such an award. The Court is well aware of its discretion in this arena, and it shall exercise that discretion in favor of Yurman Design. *See Almond Int'l,* 1999 WL 476287, at *2; *Dumas,* 1990 WL 258343, at *5; *Video Aided Instruction,* 1996 WL 711513, at *5; *see also Blue Ribbon Pet Prods.,* 66 F.Supp.2d at 464 ("Given this Court's finding of willful infringement, Blue Ribbon's request for attorney's fees and costs is ·granted, in an amount to be determined by the Court.").

■ Yurman Design stands on somewhat different ground with respect to its request for attorney's fees under 15 U.S.C. § 1117. *See Twin Peaks Prods. v. Publications Int'l,* 996 F.2d 1366, 1383 (2d Cir. 1993). Awards of attorney's fees for Lanham Act violations are typically available only in "exceptional cases," *see Lurzer GMBH v. American Showcase, Inc.,* 75 F.Supp.2d 98, ·102 (S.D.N.Y.1998), *clarified,* 1999 WL 111931 (S.D.N.Y. Mar.4, 1999), though at times a defendant's willful infringement has been found by courts to constitute exceptional circumstances. *See Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 854 (2d Cir.1995).

However, as both Yurman Design and PAJ are both assuredly aware, Yurman Design's Lanham Act claims in this case called for the application of an uncertain and evolving body of law. PAJ's defense to Yurman Design's Lanham Act claims was in good faith, and while the Court has upheld the jury's determination of willful

infringement, reasonable disputes about the permissible scope of Yurman Design's trade dress protection were to be expected. Moreover, PAJ did not delay resolution of this action any more than was necessary to safeguard its legitimate interests in a fair proceeding. *But see Sara Lee Corp. v. Bags of New York, Inc.,* 36 F.Supp.2d 161, 170–71 (S.D.N.Y.1999) (awarding attorneys fees under 15 U.S.C. § 1117(a)-(b) where infringement was found to be willful and "defendant's conduct with respect to the litigation ... caused needless expense for the plaintiff and unnecessarily consumed a great deal of the Court's time"). Consequently, an award of attorney's fees under the Lanham Act is not in order. *See Lurzer GMBH,* 75 F.Supp.2d at 102 (declining to award attorneys fees under Lanham Act, despite finding that defendant engaged in willful deception); *Gidatex v. Campaniello Imports, Ltd.,* 82 F.Supp.2d 136, 149 (S.D.N.Y.2000) (concluding that case did not qualify as "exceptional" under Lanham Act for purposes of awarding attorneys fees, despite jury's finding of bad faith infringement); *Simon & Schuster, Inc. v. Dove Audio, Inc.,* 970 F.Supp. 279, 302 (S.D.N.Y.1997) ("Although we find that Dove willfully infringed plaintiff's title 'The Book of Virtues,' we do not believe this case qualifies as 'exceptional' in order to justify an award of attorney's fees. This litigation presented a number of close and contested issues; the outcome was by no means a foregone conclusion."). Similarly, attorney's fees in connection with Yurman Design's common law unfair competition claim will not be awarded.

Additionally, Yurman Design has requested prejudgment interest on its statutory damages award under 17 U.S.C. § 504. However, setting aside the unsettled nature of the law on such prejudgment interest in this Circuit, *see Independent Living Aids, Inc. v. Maxi–Aids, Inc.,* 25 F.Supp.2d 127, 134–35 (E.D.N.Y.1998); *Antenna Television, A.E. v. Aegean Video, Inc.,* No. 95–CV–2328 ERK, 1996 WL

298252, at *14–15 (E.D.N.Y. Apr. 23, 1996), the Court declines, in its discretion, to award such interest. *See In Design v. K–Mart Apparel Corp.*, 13 F.3d 559, 569 (2d Cir.1994); *Antenna Television*, 1996 WL 298252, at *15.

Finally, Yurman Design's claim of entitlement to an accounting of profits and enhanced damages under the Lanham Act are without merit. Yurman Design made its case to the jury concerning PAJ's profits, and the jury awarded Yurman Design none. While it now claims that an "accounting" is required because of PAJ's refusal to provide certain information during discovery, the time for such quibbles is long past. The jury failed to award Yurman Design PAJ's total profits from the entire line of jewelry containing infringing items, and an accounting of PAJ profits would only replace the jury's determination with that of the Court.[6] *Cf. The Daisy Group, Ltd. v. Newport News, Inc.*, 999 F.Supp. 548 (S.D.N.Y. Mar.31, 1998) (holding that an accounting of defendant's profits pursuant to Lanham Act, 15 U.S.C. § 1117(a) was a remedy "fundamentally compensatory and legal in nature," and was therefore to be resolved by jury). The jury denied Yurman Design any such accounting of PAJ's profits, and its determination stands.

Yurman Design is also not entitled to enhanced damages under the Lanham Act. While that act allows the court to enter judgment for any sum above the amount found as actual damages, not exceeding three times such amount, *see* 15 U.S.C. § 1117(a), the jury determined that Yurman Design was not entitled to any of PAJ's profits in the first instance. Setting aside the fact that without any predicate award of Lanham Act damages nothing has been awarded by the jury to "en-

hance," as with attorney's fees the Court does not believe such damages to be warranted. *See Gidatex*, 82 F.Supp.2d at 147; *Project Strategies Corp. v. Nat'l Communications Corp.*, 948 F.Supp. 218, 223 (E.D.N.Y.1996), *aff'd*, 168 F.3d 1320, 1998 WL 486529 (Fed.Cir.1998). Enhancement of damages under the Lanham Act is intended to "constitute compensation and not a penalty," 15 U.S.C. § 1117(a), and the circumstances of this case are not sufficiently egregious. *See United States Media Corp. v. Edde Entertainment Corp.*, No. 94 CIV. 4849(MBM), 1998 WL 401532, at *24 (S.D.N.Y. July 17, 1998).

Yurman Design has not submitted any documentation concerning its attorney's fees and expenditures. Consequently, by separate application Yurman Design shall submit a detailed accounting of attorney's fees. Any such accounting shall, to the fullest extent possible, specifically identify those costs and fees expended in connection with the prosecution of its copyright claims. To the extent that Yurman Design is unable to segregate its fees in such a fashion, it should be prepared to suggest an appropriate estimate of the proportion of its fees attributable to claims brought under the Copyright Act.

### IV. *Injunctive Relief*

Yurman Design has asserted its entitlement not only to an injunction prohibiting PAJ from manufacturing, selling, or distributing infringing jewelry pieces, but also an order requiring PAJ to (1) destroy all infringing inventory; (2) destroy and recall all copies of the catalogues in which infringing jewelry was featured; (3) inform all recipients of one of those catalogues that "PAJ had no right to sell the Infringing Jewelry Products," and to identify to

---

6. Parenthetically, an accounting and detailed breakdown of the profits specifically attributable to the infringing pieces would only have helped PAJ in making its case to the jury, as it was entirely possible that the jury could have awarded Yurman Design PAJ's total profits. Because PAJ did not provide the jury with a breakdown, the argument goes, PAJ was at risk that the jury would have it bear the risk of uncertainty.

However, the jury awarded Yurman Design none of PAJ's profits, so this issue is academic.

all recipients of those catalogues, by page and item number, the specific items PAJ has been enjoined from manufacturing or selling. In addition to taking issue with the form of that relief, PAJ has requested that a stay of such relief be granted pending its contemplated appeal.

The Court will award Yurman Design the lion's share of the injunctive relief it seeks. Where a plaintiff has established liability and the threat of continued infringement, it is appropriate to enter injunctive relief in addition to damages. *See Blue Ribbon Pet Prods.*, 66 F.Supp.2d at 463 (*citing Central Point Software, Inc., v. Global Software & Accessories*, 880 F.Supp. 957, 966 (S.D.N.Y.1995)); *Richard Feiner & Co. v. Turner Entertainment Co.*, No. 96 Civ. 1472(RO), 1998 WL 78180, at *2 n. 2 (Feb. 24, 1998); *Simon & Schuster*, 970 F.Supp. at 300; *Lon Tai Shing Co. v. Koch + Lowy*, No. 90 Civ. 4464(LJF), 1992 WL 18806, at *2 (S.D.N.Y. Jan. 28, 1992).

 Crafting injunctive relief with respect to Yurman Design's copyright claims is a relatively straightforward matter. The jury found that the following PAJ items infringed upon Yurman Design's copyrighted pieces: 65–0676–9700; 68–4106–98; 66–3584–9700; and 65–0679–1300. In keeping with the general practice concerning such matters, the Court enjoins PAJ from manufacturing, distributing, or selling those items, and also orders PAJ to destroy all remaining infringing pieces within its possession, custody, or control. *See Knitwaves*, 71 F.3d at 1009 (noting court's power to order destruction or other reasonable disposition of infringing items). However, Yurman Design's request for additional relief, such as the mandatory recall of catalogues and notification of PAJ's customers, is not warranted given the adequacy of the relief granted.

 As was alluded to earlier, crafting injunctive relief for Yurman Design on its Lanham Act and common law claims is a more difficult matter. The jury had before it ample evidence from which it could conclude that Yurman Design possessed trade dress, and that its trade dress was infringed. However, try as it might, the Court cannot divine precisely what that specific trade dress was.

In the several months that have elapsed since the parties argued the instant motions, the Court has strained to divine a coherent, specific description of Yurman Design's particular trade dress. As PAJ's counsel correctly notes, while a multitude of witnesses at trial attempted to articulate Yurman's trade dress, their descriptions are somewhat unhelpful. Unfortunately, like obscenity, we only know Yurman's trade dress when we see it.

As explained earlier, this inability to articulate the trade dress does not itself justify an assault on the jury's verdict. However, it poses significant problems for the Court in issuing an injunction.

As the Second Circuit observed in *Forschner Group, Inc. v. Arrow Trading Co.*, 124 F.3d 402, 407 (2d Cir.1997), "[t]he law of trademarks and unfair competition is shaped primarily by two competing public policies—namely, preventing consumer confusion on the one hand while promoting and rewarding healthy competition on the other." Of concern are the negative effects of infringement upon Yurman Design's creative endeavors, but of equal concern are the potential ramifications of an expansive vision of trade dress protection. An overly broad and imprecisely worded injunction could easily provide Yurman Design with an undeserved and anticompetitive monopoly. An injunction, for example, preventing PAJ from selling "cable" design jewelry, perhaps with use of both gold and silver, and with balanced cabochons, endcaps, or the like, would improperly restrain trade and would not really tell PAJ—or other third parties—precisely what Yurman's trade dress is.

An imperfect solution to this problem is merely to enjoin, on terms identical to those set forth above concerning Yurman

Design's copyrighted pieces, PAJ's continued sale, distribution and manufacturing of the specific jewelry pieces identified by the jury as infringing—65–0676–9700; 65–0679–1300; 66–3584–9700; 66–3520–9800; 68–4106–98; 65–0730–3500; 65–0729–1400; 65–0725–9800; 65–0678–2700; 65–0677–4500; 68–4107–13; 68–4108–98; 68–4596–19; 68–4491–16; 68–4492–15; 68–4493–14; 65–0689–9700; 66–3639–1300; 66–3638–1600; and 66–3521–1300—as well as to order their destruction.

PAJ's request for a stay of relief is denied.

### V. *Other Outstanding Motions*

Finally, by letter dated August 11, 1999, Yurman Design made an application to the Court for sanctions in connection with PAJ's deposition of Sybil Yurman. Yurman Design brought that application in light of prior motion practice, during which the Court indicated that it would entertain such an application should the deposition of Sybil Yurman not reveal information different from that of her husband, David Yurman.

The application is denied. Not only did PAJ obtain additional information from Sybil Yurman of relevance, but it used her testimony at trial to highlight the difficulties with Yurman Design's claims of entitlement to copyright and trade dress protection.

### *Conclusion*

The Court has considered PAJ's other contentions and determined them to be without merit.

For the reasons set forth above, the motions are therefore granted in part, and denied in part.

Settle judgment on notice.

468

APPENDIX A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Yurman Design, Inc.
-v.-
PAJ, Inc.
dba -Prime Art & Jewel

98 civ. 8697
**Case Number**

JUDGE _Sweet_

(FULL TITLE OF CASE - IF NECESSARY USE OTHER SIDE)
EARANCES: (include firm name and telephone #)

PLAINTIFF: Pryor, Cashman, Sherman & Flynn, 410 Park Ave,
NY, NY 10022-4441 (212)421-4100

DEFENDANT: Strassburg & Price (214)651-4300, Furgang & Adwar
(212)725-1818, Galvin & Palmer (212)963-8900

L (JURY) (NON-JURY) BEGUN: 10-18-99, 10-19-99, 10-20-99, 10-21-9
 (Date)
10-25-99, 10-23-99, 10-29-99, 11-1-99 (concluded).
Verdict in favor of plaintiff, post trial
motions are to be submitted within
20 days.

(AN EXTRACT OF THE MINUTES)

CLERK _Ti Chan_

COURT REPORTER _Toni Stanley & Carol Sherman_

(IF NECESSARY USE OTHER SIDE)

October 28, 1999

*Court Exhibit #14 11-1-99 3:45pm*

## SPECIAL VERDICT FORM: Yurman v. PAJ

### Yurman's Copyright Claim

1. Did Yurman establish that it is the owner of <u>any</u> jewelry designs protected by the Copyright Act?

 Yes ✓ No _____

 If you answered "Yes" to Question 1, please proceed to Question 1(a) below. <u>If you answered "No" to Question 1, proceed directly to Question 5</u>.

1(a). Please indicate, by marking "Yes" or "No," which of the Yurman jewelry designs listed below are works protected by the Copyright Act.

| Yurman Jewelry Design | Yes | No |
|---|---|---|
| B4973 (Copyright Registration No. VA 643-194) | ✓ | |
| B4977 (Copyright Registration No. VA 785-335) | ✓ | |
| E4973 (Copyright Registration No. VA 785-334) | ✓ | |
| E4395 (Copyright Registration No. VA 785-336) | ✓ | |
| B4809 (Copyright Registration No. VAu 254-365) | ✓ | |

Proceed to Question 2. Note: <u>If you answered "No" to every entry in Quesition 1(a) proceed directly to Question 5</u>

2. Did PAJ infringe upon <u>any</u> copyrighted Yurman designs?

 Yes ✓ No_____

 If you answered "Yes" to Question 2, please proceed to Question 3 below. <u>If you answered "No" to Question 2,</u>

1

proceed directly to Question 5.

3. Please indicate, by marking "Yes" or "No," which of the copyrighted Yurman work(s) listed in the questions below were infringed by PAJ, and by what pieces of PAJ jewelry. Also indicate whether any infringement was willful by placing a checkmark in the appropriate column.

You are only to indicate a response in the boxes below concerning those Yurman designs for which you marked "Yes" in Question 1(a).

3(a). Is Yurman's B4973 infringed by:

| | Yes | No | If "Yes," was the infringement willful? | |
| --- | --- | --- | --- | --- |
| PAJ Jewelry Design | Yes | No | Yes | No |
| 65-0676-9700 | ✓ | | ✓ | |
| 68-4106-98 | ✓ | | ✓ | |

Proceed to Question 3(b).

3(b). Is Yurman's B4977 infringed by:

| | Yes | No | If "Yes," was the infringement willful? | |
| --- | --- | --- | --- | --- |
| PAJ Jewelry Design | Yes | No | Yes | No |
| 65-0676-9700 | ✓ | | ✓ | |
| 68-4106-98 | ✓ | | ✓ | |

Proceed to Question 3(c).

3(c). Is Yurman's E4973 infringed by:

| | Yes | No | If "Yes," was the infringement willful? | |
| --- | --- | --- | --- | --- |
| PAJ Jewelry Design | Yes | No | Yes | No |

| 66-3584-9700 | ✓ | | ✓ | |
|---|---|---|---|---|

Proceed to Question 3(d).

3(d). Is Yurman's **E4395** infringed by:

| PAJ Jewelry Design | Yes | No | If "Yes," was the infringement willful? Yes | No |
|---|---|---|---|---|
| 65-3520-9800 | | ✓ | | ✓ |
| 68-4106-98 | | ✓ | | |

Proceed to Question 3(e).

3(e). Is Yurman's **B4809** infringed by:

| PAJ Jewelry Design | Yes | No | If "Yes," was the infringement willful? Yes | No |
|---|---|---|---|---|
| 65-0679-1300 | ✓ | | ✓ | |

Proceed to Question 4.

4. Please indicate the total amount of statutory damages, if any, to be awarded to Yurman. Remember that you may only increase your award to a maximum of $100,000 per copyrighted work infringed if PAJ's infringement of that work was "willful." Moreover, the minimum damages of $500 per copyrighted work infringed may only be reduced to $200 if PAJ has established that it was not aware and had no reason to believe that its acts constituted an infringement of copyright.

$ 275,000

Proceed to Question 5.

**Lanham Act ("Trade Dress") Claim**

5. Has Yurman established that the trade dress of its jewelry designs is inherently distinctive?

3

Yes _✓_ No _____

Proceed to Question 6.

6. Has Yurman established that the trade dress of its
 jewelry designs has become distinctive through evidence
 of secondary meaning?

 Yes _✓_ No _____

If you answered "Yes" to either Question 5 or Question 6, or
to both, please proceed to Question 7. If you answered "No"
to both, then proceed directly to the "stop" instruction at
the end of this form.

7. Has Yurman established that PAJ's use of Yurman's trade
 dress is likely to cause confusion concerning the
 source of PAJ's jewelry?

 Yes _✓_ No _____

If you answered "Yes" to Question 7, please proceed to
Question 8. If you answered "No," then proceed directly to
the "stop" instruction at the end of this form.

8. Has PAJ established that Yurman's trade dress has been
 abandoned?

 Yes _Ø_ No _✓_

If you answered "No," then please proceed to Question 9
below. If you answered "yes" to Question 8, then proceed
directly to the "stop" instruction at the end of this form.

9. Please indicate, by marking "Yes" or "No," which of the
 PAJ jewelry designs listed below infringe upon Yurman's
 trade dress. Also indicate whether any infringement
 was made with willful deception by placing a checkmark
 in the appropriate column.

| PAJ Jewelry Design (Style Number) | Yes | No | If "yes," was the infringement willful? | |
|---|---|---|---|---|
| | | | Yes | No |
| 65-0676-9700 | ✓ | | ✓ | Ø |

| | YES | NO | YES | NO |
|---|---|---|---|---|
| 65-0676-1300 | ✓ | Ø | ✓ | |
| 66-3584-9700 | ✓ | Ø | ✓ | |
| 66-3520-9800 | ✓ | | ✓ | |
| 68-4106-98 | ✓ | | ✓ | |
| 65-0730-3500 | ✓ | | ✓ | |
| 65-0729-1400 | ✓ | | ✓ | |
| 65-0725-9800 | ✓ | | ✓ | |
| 65-0678-2700 | ✓ | | ✓ | |
| 65-0677-4500 | ✓ | | ✓ | |
| 68-4107-13 | ✓ | | ✓ | |
| 68-4108-98 | ✓ | | ✓ | |
| 68-4113-13 | | ✓ | | ✓ |
| 68-4596-19 | ✓ | | ✓ | |
| 68-4491-16 | ✓ | | ✓ | |
| 68-4492-15 | ✓ | | ✓ | |
| 68-4493-14 | ✓ | | ✓ | |
| 65-0689-9700 | ✓ | | ✓ | |
| 66-3639-1300 | ✓ | | ✓ | |
| 66-3638-1600 | ✓ | | ✓ | |
| 66-3521-1300 | ✓ | | ✓ | |

If you found any of the above trade dress infringements to be willful, please proceed to Question 10. If you found none to have been with willful deception, then please proceed to the "stop" instruction at the end of this form.

10. Has PAJ rebutted any presumption of actual customer confusion raised by its willful infringement of Yurman's trade dress?

Yes _____ No ___✓___

If you answered "No," then please proceed to Question 11 below. If you answered "yes" to Question 10, then proceed directly to the "stop" instruction at the end of this form.

11. State those PAJ profits, if any, that are to be awarded

5

to Yurman.

$ ~~100% of whatever the profit was?~~

Proceed to Question 12.

**Unfair Competition**

12. State those PAJ profits, if any, that are to be awarded to Yurman.

$ ~~100% of whatever profits~~

Proceed to Question 13.

13. If you find that PAJ's actions were willful, wanton, or malicious, state the punitive damages, if any, to be paid by PAJ.

$ *800,000*

**STOP:** Sign the form and advise the Marshal that you have reached a verdict.

_Mary Hughes_
Foreperson